[No. 26840-0-II. Division Two. October 18, 2002.]

CHARLES PRICE, ET AL., *Plaintiffs*, KIMBERLY RENE PRICE, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

*Cynthia Novotny* and *Philip J. Buri* (of *Brett & Daughert, P.L.L.C.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Jeffrey A. Freimund, Assistant,* for respondent.

MORGAN, J. — The questions in this appeal are whether a three-year-old sibling can sue the Department of Social and Health Services (DSHS) for negligent failure to disclose information pertinent to an adoption decision, and whether the adoptive parents, who clearly can sue under *McKinney*

*v. State*,[1] can recover emotional distress damages. The answers are no and yes, respectively.

In 1981, Charles and Jackie Price had a three-year-old daughter named Kimberly. Through DSHS, they adopted a two-year-old boy, C. According to the jury's later verdict, they were not fully aware of C.'s problems. The facts surrounding the adoption were stated in a prior appeal[2] and need not be repeated here.

In late 1994, Charles, Jackie, and Kimberly filed suit against DSHS. They alleged that DSHS had negligently failed to disclose all information pertinent to the adoption.

The case was tried to a jury in October 2000. On October 13, 2000, the jury found that DSHS was negligent; that the negligence had proximately caused economic damages of $84,300; and that the negligence had proximately caused noneconomic (emotional distress) damages of $24,500 to Charles; $49,000 to Jackie; and $108,500 to Kimberly. The jury also found that Charles and Jackie were 41.5 percent negligent.

On October 27, 2000, DSHS moved for judgment notwithstanding the verdict. It argued that it did not owe a duty of disclosure to Kimberly, and that emotional distress damages were not recoverable as a matter of public policy.

In December 2000, the trial court ruled that DSHS did not owe a duty to Kimberly, but that Charles and Jackie could recover emotional distress damages. The court set aside the award to Kimberly but entered judgment on the remainder of the verdict. Kimberly appealed, and DSHS cross-appealed.

Relying on *McKinney*, Kimberly now argues that DSHS owed her a duty of reasonable care to disclose all information pertinent to the adoption—even though she was only three years old at the time. In addition to denying that it owed Kimberly any duty of care, DSHS argues that it

---

[1] 134 Wn.2d 388, 950 P.2d 461 (1998).

[2] *See Price v. State*, 96 Wn. App. 604, 980 P.2d 302 (1999), *review denied*, 139 Wn.2d 1018 (2000).

cannot be held liable, even to Charles and Jackie, for emotional distress damages. We discuss duty first and damages second.

## I. DUTY

In *McKinney*, the Washington Supreme Court held that an adoption placement agency like DSHS owes *prospective adoptive parents* a duty of reasonable care to disclose information pertinent to the adoption.[3] The court based such duty partly on the adoption statutes and partly on the existence of a "special relationship" between the agency and the prospective parents. The court said:

> We believe the Legislature has established the duty owed by adoption placement agencies in RCW 26.33.350 (medical/psychological history) and RCW 26.33.380 (social history). The negligent failure of an adoption placement agency to comply with the statutory disclosure mandate to prospective adoptive parents may result in liability. The scope of the agency's duty is appropriately drawn in those disclosure statutes.[4]

And even if these statutes were less persuasive, the court also said, "[t]he special relationship between adoption placement agencies and adopting parents argues strongly for recognition of a cause of action in tort."[5] The purposes are "not only [to] enable Washington's adoptive parents to obtain timely and appropriate medical care for the child, but ... also [to] enable them to make an intelligent and informed adoption decision."[6]

■■ Although *McKinney* does not so state, Kimberly asserts that this duty extends not just to prospective adoptive parents, but also to prospective adoptive siblings like her. To ascertain whether she is correct, we look first to

---

[3] 134 Wn.2d at 400.

[4] 134 Wn.2d at 396.

[5] 134 Wn.2d at 397.

[6] 134 Wn.2d at 400.

the adoption statutes and second to the "special relationship" noted in *McKinney*.

Kimberly's assertion is not supported by the statute in effect when the Prices decided to adopt C. In 1981, former RCW 26.36.050 provided:

> Every person, firm, society, association, or corporation receiving, securing a home for, or otherwise caring for a minor child shall transmit *to the prospective adopting parent* prior to placement and shall make available to all persons with whom a child has been placed by adoption a complete medical report containing all reasonably available information concerning the mental, physical and sensory handicaps of said child. Said report shall not reveal the identity of the natural parents of the child but shall include any reasonably available mental or physical health history of the natural parents that needs to be known by the adoptive parents to facilitate proper health care for the child. RCW 26.36.030 and 26.36.060 shall not apply to any information made available by this section.[7]

This statute requires the disclosure of information—specifically, "a complete medical report"—to the prospective adoptive parents *or other person* "with whom a child has been placed by adoption." Its purposes, according to its terms and to *McKinney*,[8] are to "enable Washington's adoptive parents . . . to make an intelligent and informed adoption decision," and to enable such parent (or other person with whom the child may be placed) "to obtain timely and appropriate medical care for the child."[9] It generates a duty to those who undertake to care for the child, but not a duty to siblings.

Likewise, Kimberly's assertion is not supported by the "special relationship" recognized in *McKinney*. The *McKinney* court described that "special relationship" as one

---

[7] (Emphasis added.) This statute was amended several times after 1981. It is now codified as RCW 26.33.350. In 1984, another similar statute was enacted and codified as RCW 26.33.350. The various versions of both statutes are set forth in *Price*, 96 Wn. App. at 614 n.4.

[8] *McKinney* dealt with a successor statute, but it was very similar to the one under discussion here.

[9] 134 Wn.2d at 400.

"between adoption placement agencies and adopting parents."[10] The duty that emanates from this relationship is to exercise reasonable care in disclosing information pertinent to the adoption, thus enabling the "adoptive parents to obtain timely and appropriate medical care for the child" and "make an intelligent and informed adoption decision."[11] Neither the relationship nor the resulting duty extends to a three-year-old sibling like Kimberly.

These conclusions are at least consistent with the law of other jurisdictions. Although several of those jurisdictions hold that an adoption agency owes a duty of disclosure to adoptive parents, we are aware of none that holds an adoption agency owes a duty to adoptive siblings.[12]

Citing *Tyner v. Department of Social & Health Services*, Kimberly asserts that she " 'is within the class for whose "especial" benefit the statute was enacted' "; that " 'legislative intent . . . implicitly supports creating or denying a remedy' "; and that " 'implying a remedy is consistent with the underlying purpose of the legislation.' "[13] For the reasons already discussed, we hold that parents, not siblings, are within the class for whose benefit the statute was enacted; that the legislature's intent was not to create a remedy for siblings; and that implying a remedy for siblings would not be "consistent with the underlying purpose of the legislation." Accordingly, we conclude that DSHS did not owe three-year-old Kimberly a duty of reasonable care to disclose information pertinent to C.'s adoption, and that the

---

[10] 134 Wn.2d at 397.

[11] 134 Wn.2d at 400.

[12] *See, e.g., Wolford v. Children's Home Soc'y of W. Va.*, 17 F. Supp. 2d 577 (S.D. W. Va. 1998); *Mohr v. Commonwealth*, 421 Mass. 147, 653 N.E.2d 1104 (1995); *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882 (1994); *Roe v. Catholic Charities*, 225 Ill. App. 3d 519, 167 Ill. Dec. 713, 588 N.E.2d 354 (1992); Harriet Dinegar Milks, Annotation, *"Wrongful Adoption" Causes of Action Against Adoption Agencies Where Children Have or Develop Mental or Physical Problems That Are Misrepresented or Not Disclosed to Adoptive Parents*, 74 A.L.R.5th 1 (1999).

[13] 141 Wn.2d 68, 77-78, 1 P.3d 1148 (2000) (quoting *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990)).

trial court did not err by setting aside the jury's award of damages to Kimberly.

## II. DAMAGES

█ The availability of emotional distress damages depends on whether the parties had a relationship that preexisted the defendant's breach of duty. If the parties lacked a preexisting relationship, and the defendant's breach was negligent rather than intentional, emotional distress damages are available only if the plaintiff proves "objective symptomatology."[14] If the parties had a preexisting relationship, the availability of emotional distress damages turns generally on the characteristics of the particular relationship. If the relationship was primarily economic, emotional distress damages may not be available.[15] If the relationship was not primarily economic, emotional distress damages may be available.[16]

Several cases illustrate these principles. In *Gaglidari v. Denny's Restaurants, Inc.*, a contract case, the court quoted *Restatement of Contracts* § 341, which states:

"Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result."[17]

The *Gaglidari* court then said:

Restatement of Contracts § 341 does not support the general availability of emotional distress damages in breach of contract actions. Rather, Restatement of Contracts § 341 comment *a* focuses on the type or character of the contract. Emotional damages are available under the original Restatement only

---

[14] *Hegel v. McMahon*, 136 Wn.2d 122, 132, 960 P.2d 424 (1998); *Hunsley v. Giard*, 87 Wn.2d 424, 436, 553 P.2d 1096 (1976); *Cunningham v. Lockard*, 48 Wn. App. 38, 43, 736 P.2d 305 (1987).

[15] *Gaglidari v. Denny's Rests., Inc.*, 117 Wn.2d 426, 446, 815 P.2d 1362 (1991).

[16] *See, e.g., Berger v. Sonneland*, 144 Wn.2d 91, 26 P.3d 257 (2001); *Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 656 P.2d 483 (1983).

[17] 117 Wn.2d at 443 (emphasis omitted).

when the type or character of the contract renders emotional suffering for reasons other than pecuniary loss foreseeable from the outset.[18]

The *Gaglidari* court also noted that other jurisdictions "have generally limited emotional distress damages to contracts uniquely intended to protect some personal interest or security and which are incapable of compensation by reference to the terms of the contract."[19] Given that the relationship in issue was only economic, the *Gaglidari* court concluded that emotional distress damages were not recoverable.

In *Harbeson v. Parke-Davis*,[20] a tort case, the plaintiffs had a preexisting relationship with the defendant health care providers. They sued for "wrongful birth," which the Supreme Court defined as "an action based on an alleged breach of the duty of a health care provider to impart information or perform medical procedures with due care, where the breach is a proximate cause of the birth of a defective child."[21] Answering a certified question submitted by a federal court before trial, the Washington Supreme Court held that the plaintiffs' claim was actionable and, if proved, that the plaintiffs would be entitled to compensation. The court also held—without requiring physical impact or objective symptomatology—"that recovery may include the medical, hospital, and medication expenses attributable to the child's birth and to its defective condition, *and in addition damages for the parents' emotional injury* caused by the birth of the defective child."[22]

In *Berger v. Sonneland*,[23] a tort case, the plaintiff had a preexisting relationship with her doctor. She sued him for medical malpractice, based upon his "unauthorized disclo-

---

[18] *Gagliardi v. Denny's Rests., Inc.*, 117 Wn.2d 426, 445, 815 P.2d 1362 (1991).

[19] 117 Wn.2d at 446.

[20] 98 Wn.2d 460, 656 P.2d 483 (1983).

[21] 98 Wn.2d at 467.

[22] 98 Wn.2d at 475 (emphasis added).

[23] 144 Wn.2d 91, 26 P.3d 257 (2001).

sure of confidential information" to her ex-husband.[24] She expressly stated that she was not claiming "any medical or physical injury," but that she was claiming "emotional distress."[25] The trial court dismissed on summary judgment because the "[p]laintiff has not set forth . . . the required objective symptoms of emotional distress required under Washington law."[26] The Supreme Court held that if the plaintiff were otherwise entitled to recover, she could recover emotional distress damages without proving physical impact or objective symptomatology.

In *Anderson v. State Farm Insurance Co.*,[27] a tort case,[28] the plaintiff had a preexisting relationship with her insurer. She sued the insurer, alleging it had impermissibly failed to advise her of underinsured motorist coverage. The trial court granted summary judgment to the insurer, and the insured appealed. Division One of this court held that because "bad faith is a tort, a plaintiff is not limited to economic damages," but may also cover emotional damages.[29]

 The relationship in issue here is that between an adoption agency and prospective adoptive parents. It is not merely economic, and a reasonable person standing in the defendant's shoes would easily foresee that its breach is likely to cause significant emotional distress. It will support emotional distress damages without proof of physical impact or objective symptomatology.

---

[24] 144 Wn.2d at 94.

[25] 144 Wn.2d at 96.

[26] 144 Wn.2d at 100.

[27] 101 Wn. App. 323, 2 P.3d 1029 (2000), *review denied*, 142 Wn.2d 1017 (2001).

[28] *See Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 389, 823 P.2d 499 (1992) ("An action for bad faith handling of an insurance claim sounds in tort.").

[29] *Anderson*, 101 Wn. App. at 333; *see also Coventry Assocs. v. Am. States Ins. Co.*, 136 Wn.2d 269, 284, 961 P.2d 933 (1998); *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 698, 17 P.3d 1229, *review denied*, 144 Wn.2d 1005 (2001).

In reaching this result, we reject DSHS' reliance on *White River Estates v. Hiltbruner*.[30] The duty in *Hiltbruner* was created by statute. The duty here is created by the common law, although partly because of a statute. *Hiltbruner* is inapposite here.

We also reject DSHS' reliance on *Hegel v. McMahon*,[31] *Cunningham v. Lockard*,[32] *Waller v. State*,[33] and *Branom v. State*.[34] *Hegel* and *Cunningham* held only that when parties have no relationship prior to the defendant's breach, emotional distress is not actionable without physical impact or objective symptomatology. *Waller* held likewise; because the plaintiff and the court characterized the plaintiff's claim as one for "negligent infliction of emotional distress,"[35] the court did not consider whether emotional distress damages could be based on a relationship existing prior to the defendant's alleged breach. *Branom* held that the claims in issue could be brought only under chapter 7.70 RCW; that there was no preexisting relationship within the meaning of that statute; and that if the case were considered without relying on a preexisting relationship, the elements of negligent infliction were not met. We have no quarrel with any of these holdings, but none of them applies here. For the reasons discussed in this section, we conclude that the trial court did not err by upholding the jury's awards of emotional distress damages to Charles and Jackie.

Affirmed.

QUINN-BRINTNALL, A.C.J., and BRIDGEWATER, J., concur.

---

[30] 134 Wn.2d 761, 953 P.2d 796 (1998).

[31] 136 Wn.2d 122, 960 P.2d 424 (1998).

[32] 48 Wn. App. 38, 736 P.2d 305 (1987).

[33] 64 Wn. App. 318, 824 P.2d 1225, *review denied*, 119 Wn.2d 1014 (1992).

[34] 94 Wn. App. 964, 974 P.2d 335, *review denied*, 138 Wn.2d 1023 (1999).

[35] 64 Wn. App. at 326.