FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8:38

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JULIE HENDRICKSON,<br><br>Appellant,<br><br>v.<br><br>TENDER CARE ANIMAL HOSPITAL CORPORATION d/b/a RIDGETOP ANIMAL HOSPITAL (UBI 602-262-385), a Washington for-profit corporation; SHANNON L. HEATH (VT 6597), a licensed Washington veterinarian; the marital community or domestic partnership comprised of SHANNON HEATH and DOE HEATH; KRISTEN T. CAGE (VT 8099), a licensed Washington veterinarian; the marital community or domestic partnership comprised of KRISTEN T. CAGE and DOE CAGE; and DOES 1-10,<br><br>Respondents. | No. 39767-6-II<br><br><br>PUBLISHED OPINION |

QUINN-BRINTNALL, J. — Julie Hendrickson appeals the trial court's summary dismissal of her claims for negligent misrepresentation, lack of informed consent, professional negligence, reckless breach of bailment contract, and emotional damages arising out of treatment her dog received at Tender Care Animal Hospital Corporation d/b/a Ridgetop Animal Hospital. She argues that the trial court erred when it (1) dismissed her claims for reckless breach of bailment

contract and emotional damages, and (2) dismissed all of her tort claims against Tender Care based on the economic loss rule now denominated the independent duty doctrine.

We hold that the trial court properly dismissed Hendrickson's claims for reckless breach of bailment contract and emotional damages because no Washington court has held that such causes of action exist in the context of loss of a pet. Because our Supreme Court has not specifically approved of the applying of the independent duty doctrine to cases involving veterinary care liability or the torts at issue here, we reverse the trial court's summary dismissal of Hendrickson's tort claims and remand for reconsideration of these issues.

FACTS

On March 16, 2007, Hendrickson brought Bear, her golden retriever, to Tender Care to have him neutered and implanted with a microchip. After the procedures, Kristen Cage, the veterinarian on duty that evening, noticed that Bear's abdomen looked swollen. She ordered that x-rays be taken to make sure that Bear did not have gastric dilatation volvulus (GDV), a life-threatening condition that results from the accumulation of gas, fluid, or a combination of the two in the stomach. When Cage examined the x-rays, she noticed that Bear had significant gastric distention but not GDV.

When Hendrickson picked Bear up after the procedures, a front desk employee told her that Bear had vomited but that he had been given antivomiting medication and that he was "much better." Clerk's Papers (CP) at 32. Hendrickson noticed that Bear's abdomen was swollen and when she asked, a Tender Care employee told her that Bear "threw up a lot and swallowed lots of air." CP at 111. The employee told Hendrickson to give Bear an antibloating medication, take him on frequent walks and if his condition worsened, take him to the animal emergency hospital.

2

When Hendrickson brought Bear back to her home, she did not give him the antibloating medication and instead administered a homeopathic remedy. When she let Bear outside, he lay down in the driveway. Noticing Bear's worsening condition, Hendrickson lifted him into her car to take him to the emergency hospital and noticed that he had stopped breathing and had a weak, rapid pulse. She called a neighbor to drive her and Bear to the emergency hospital while she performed cardiopulminary resuscitation. Bear arrived at the hospital in respiratory and cardiac arrest and could not be resuscitated. The likely cause of death was GDV.

Hendrickson sued for professional negligence, negligent misrepresentation, lack of informed consent, and reckless breach of bailment contract. She also sought damages for emotional distress arising out of the breach of bailment claim. Tender Care moved for partial summary judgment, claiming that Hendrickson could not prove by clear, cogent, and convincing evidence that Tender Care misrepresented Bear's condition and that claims for lack of informed consent do not apply in cases involving animals. It also argued that because pets are personalty under Washington law, damages for Bear's loss were purely economic and not recoverable in tort under the economic loss rule. Finally, it claimed that Hendrickson's damages, if any, should be limited to the replacement value of the animal because a pet owner has no right to damages for emotional distress for loss of a pet.

The trial court partially granted Tender Care's summary judgment motion, dismissing Hendrickson's tort claims, claims for emotional distress damages, and reckless breach of bailment contract claim.[1] Hendrickson appeals the trial court's summary dismissal of these

---

[1] The trial court denied Tender Care's motion to limit damages to replacement or market value and to dismiss Hendrickson's contract claim. The trial court later granted Hendrickson's motion to voluntarily dismiss the contract claim without prejudice.

claims. We accepted discretionary review and granted Tender Care's motion to stay our review of this case pending our Supreme Court's decision in *Jackowski v. Borchelt*, 174 Wn.2d 720, 278 P.3d 1100 (2012), in which our Supreme Court recognized the recharacterization of the economic loss rule as the independent duty doctrine.

## DISCUSSION

STANDARD OF REVIEW

We review a trial court's summary judgment order de novo, engaging in the same inquiry as the trial court. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Visser v. Craig*, 139 Wn. App. 152, 157, 159 P.3d 453 (2007) (quoting CR 56(c)).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'" *Visser*, 139 Wn. App. at 158 (quoting *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). "If the nonmoving party fails to do so, then summary judgment is proper." *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

We consider all evidence submitted and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *McPhaden v. Scott*, 95 Wn. App. 431, 434, 975 P.2d 1033, *review denied*, 138 Wn.2d 1017 (1999). But a nonmoving party "may not rely on

speculation, [or on] argumentative assertions that unresolved factual issues remain." *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

RECKLESS BREACH OF BAILMENT CONTRACT AND EMOTIONAL DISTRESS DAMAGES

Hendrickson argues that the trial court erred when it dismissed her claims for reckless breach of bailment and emotional distress damages. Because Hendrickson has failed to submit, and this court is not aware of, any Washington case creating a claim for emotional distress damages arising out of a contract action, we disagree.

Washington law is clear that "a pet owner has no right to emotional distress damages or damages for loss of human-animal bond based on the negligent death or injury to a pet." *Sherman v. Kissinger*, 146 Wn. App. 855, 873, 195 P.3d 539 (2008).[2] Thus, in support of her argument that emotional damages should be recoverable for reckless breach of bailment contract, Hendrickson primarily relies on our Supreme Court's discussion in *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 815 P.2d 1362 (1991), an employment law case.

In that case, Gaglidari, a Denny's employee, brought a claim for breach of employment contract for discharging her without complying with the terms of her employment handbook. *Gaglidari*, 117 Wn.2d at 430. In seeking emotional distress damages, Gaglidari relied on two decisions in which other divisions of this court held that emotional distress damages were available for intentional or reckless breach of contract, *Thomas v. French*, 30 Wn. App. 811, 817, 638 P.2d 613 (1981), *rev'd on other grounds*, 99 Wn.2d 95, 659 P.2d 1097 (1983), and

---

[2] The *Sherman* court also noted that "malicious injury to an animal can support a claim for emotional distress damages" and that Washington courts may recognize emotional distress damages for intentional torts related to animals. 146 Wn. App. at 873 (citing *Womack v. Rardon*, 133 Wn. App. 254, 263, 135 P.3d 542 (2006)). However, as this appeal concerns neither issue, we do not address the matter further.

*Cooperstein v. Van Natter*, 26 Wn. App. 91, 99, 611 P.2d 1332, *review denied*, 94 Wn.2d 1013 (1980). Both decisions hinged their analysis on the following provision of the *Restatement of Contracts* § 341 (1932):

> In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and *where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss.*

The *Cooperstein* and *Thomas* courts held that emotional distress damages were available when the breach was either intentional or reckless and the defendant had reason to know when the contract was made that a breach would cause mental suffering for reasons other than mere pecuniary loss. *Cooperstein*, 26 Wn. App. at 99; *Thomas*, 30 Wn. App. at 817. But our Supreme Court in *Gaglidari* held that these courts had interpreted the *Restatement* too broadly. 117 Wn.2d at 443. The court quoted *Restatement (Second) of Contracts* § 353 (1981), which provides, "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or *the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.*" *Gaglidari*, 117 Wn.2d at 443. Comment *a* to this section provides,

> In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.

RESTATEMENT (SECOND) OF CONTRACTS § 353 cmt. *a* (1981).

Based on these examples, the court held that the *Cooperstein* and *Thomas* courts misapplied the *Restatement* because

> *Restatement of Contracts* § 341 does not support the general availability of emotional distress damages in breach of contract actions. Rather, *Restatement of Contracts* § 341 comment *a* focuses on the type or character of the contract. Emotional damages are available under the original *Restatement* only when the type or character of the contract renders emotional suffering for reasons other than pecuniary loss foreseeable from the outset. The Court of Appeals' standard goes beyond the *Restatement* by allowing emotional distress damages regardless of the type of contract involved whenever the breach was wanton or reckless and emotional distress was foreseeable from the outset.

*Gaglidari*, 117 Wn.2d at 445. Thus, the court held,

> [W]hile Washington case law has recognized that a breach of contract may also lead to a related tort claim, we have yet to erase the traditional distinction between tort and contract damages in order to award damages for emotional distress on an ordinary breach of contract action. Anything to the contrary in *Thomas* or *Cooperstein* is specifically disapproved.

*Gaglidari*, 117 Wn.2d at 445.

Noting the importance of predictability and employer discretion in employment contracts, the court held that emotional distress damages caused by breach of employment contract were not recoverable in Washington. *Gaglidari*, 117 Wn.2d at 447-48. The court also recognized that although "'breach of an employment contract may result in emotional distress . . . [t]he primary purpose in forming such contracts . . . is economic and not to secure the protection of personal interests.'" *Gaglidari*, 117 Wn.2d at 441 (quoting *Valentine v. Gen. Am. Credit, Inc.*, 420 Mich. 256, 263, 362 N.W.2d 628 (1984)).

Although the *Gaglidari* court denied the plaintiff's claim for emotional distress damages for breach of an employment contract, Hendrickson asks this court to apply the *Restatement* rules set forth in *Gaglidari* to a claim for breach of a bailment contract for veterinary services. She argues that the type of contract at issue here is the type of contract contemplated by the

*Restatement* as particularly likely to cause severe emotional disturbance if breached, citing our decision in *Price v. State*, 114 Wn. App. 65, 57 P.3d 639 (2002), as support.

In *Price*, adoptive parents sued the Washington State Department of Social and Health Services for negligent misrepresentation for its failure to disclose the extent of the adopted child's problems, seeking damages for emotional distress. 114 Wn. App. at 67. Upon reviewing Washington case law dealing with emotional damages, we recognized that emotional distress damages tended to be unavailable when the parties had a preexisting, primarily economic relationship, but may be available if the relationship was not primarily economic. *Price*, 114 Wn. App. at 71. Thus, we held that the trial court properly awarded emotional damages to the adoptive parents because the relationship "between an adoption agency and prospective adoptive parents . . . is not merely economic, and a reasonable person standing in the defendant's shoes would easily foresee that its breach is likely to cause significant emotional distress." *Price*, 114 Wn. App. at 73. In reaching this holding, we cited other cases involving types of relationships sufficient to give rise to emotional distress damages, two involving the patient-physician relationship and one involving the insurer-insured relationship. *See Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 483, 656 P.2d 483 (1983) (wrongful birth action); *Berger v. Sonneland*, 144 Wn.2d 91, 106, 26 P.3d 257 (2001) (physician's wrongful disclosure of confidential information); *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 333, 2 P.3d 1029 (2000) (insurer bad faith), *review denied*, 142 Wn.2d 1017 (2001).

Hendrickson argues that the contract for veterinary services at issue here was more analogous to the relationship between the adoption agency and adoptive parents in *Price* than the employer-employee relationship in *Gaglidari*. Thus, she argues, under the *Restatement*, the reckless breach of the contract to care for Bear was the type of contract likely to cause severe

emotional disturbance, thus warranting emotional distress damages even absent bodily harm. In support of her contention that "emotional suffering is foreseeable and expected when companion animals are injured or killed," Hendrickson cites multiple Washington cases discussing the relationship between humans and companion animals. Br. of Appellant at 35 (quoting *Pickford v. Masion*, 124 Wn. App. 257, 263, 98 P.3d 1232 (2004) ("'Pickford, with good reason, maintains that Buddy is much more than a piece of property; we agree.'"); *Womack v. Rardon*, 133 Wn. App. 254, 263-64, 135 P.3d 542 (2006) ("'The damages are consistent with actual and intrinsic value concepts as found in *Pickford* because, depending upon the particular case facts, harm may be caused to a person's emotional well-being by malicious injury to that person's pet as personal property.'"); *Mansour v. King County*, 131 Wn. App. 255, 267, 128 P.3d 1241 (2006) ("[We have recognized the] 'emotional importance of pets to their families.'")).

But Hendrickson's reliance on these cases is misplaced. *Price* and the other cases involving emotional damages, while instructive, are not analogous here because they did not involve claims for emotional damages arising out of a reckless breach of contract; rather, they all involved negligence claims in tort. Moreover, the harm involved in those cases was the type for which emotional damages have historically been available. For example, in *Harbeson*, in awarding emotional distress damages for wrongful birth, our Supreme Court recognized that although the wrongful death of a child statute, which provides for emotional distress damages, was not necessarily applicable to a wrongful birth claim because the statute involves injury to a child, not the child's parents, "the statute reflects a policy to compensate parents not only for pecuniary loss but also for emotional injury [and t]here appears to be no compelling reason that policy should not apply in wrongful birth actions." 98 Wn.2d at 475.

By contrast, here, although the Washington cases Hendrickson cites recognize the existence of emotional suffering resulting from the injury to or loss of a companion animal, those cases uniformly recognize the historic treatment of those animals as property under Washington law and the limitation on emotional distress damages for such injury except in cases of malicious or intentional infliction of injury to those animals. In fact, Hendrickson has failed to submit, and this court is not aware of, any Washington case applying the *Restatement* rule and creating a claim for emotional distress damages arising out of a contract action. Thus, recognizing for the first time the existence of emotional distress damages for reckless breach of a bailment contract for veterinary services would constitute a significant change in the law and, as the *Gaglidari* court noted,

> The impact of allowing emotional distress damages for breach of contract would indeed be enormous. It is easily predictable there would be a jury issue on emotional distress in nearly every employee discharge case and in fact nearly every breach of contract case. The contractual consensus of the parties will become secondary to an action in tort. This will represent a profound change in the law, the implication of which probably can be explained only by adverting to the "Law of Unintended Consequences." If there is to be a change of the common law, we believe a more prudential approach would be for the Legislature to consider the matter prior to such a change occurring.

117 Wn.2d at 448. Accordingly, we hold that the trial court did not err when it dismissed Hendrickson's claims for reckless breach of bailment contract and emotional distress damages.

INDEPENDENT DUTY DOCTRINE

Hendrickson next argues that the trial court erred when it dismissed her tort claims based on the former economic loss rule which, while this appeal was pending, was recharacterized as the independent duty doctrine. Because our Supreme Court has not specifically approved of the application of the independent duty doctrine to cases involving the torts at issue here or in cases

10

of veterinary liability, we agree. The trial court erred when it dismissed Hendrickson's tort claims under the economic loss rule; remand is necessary for reconsideration of these claims.

When a court is called to "distinguish between claims where a plaintiff is limited to contract remedies and cases where recovery in tort may be available," Washington courts historically applied the economic loss rule. *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 389, 241 P.3d 1256 (2010). The rule applied "to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 159 Wn.2d 674, 681, 153 P.3d 864 (2007). Under our Supreme Court's characterization of the economic loss rule in *Alejandre*, the "key inquiry" was "the nature of the loss and the manner in which it occur[ed], i.e., [we]re the losses economic losses, with economic losses distinguished from personal injury or injury to other property. If the claimed loss [was] an economic loss . . . then the parties [were] limited to contractual remedies." 159 Wn.2d at 684.

While this appeal was pending, our Supreme Court in *Eastwood* "recast the economic loss rule as the independent duty doctrine." *Jackowski*, 174 Wn.2d at 730. In *Eastwood*, the court noted in a plurality decision that "[t]he term 'economic loss rule' has proved to be a misnomer" because it "gives the impression that this is a rule of general application and any time there is an economic loss, there can never be recovery in tort."[3] 170 Wn.2d at 387-88. It

---

[3] In *Eastwood*, Justice Fairhurst wrote the lead opinion on behalf of three justices and Justice Chambers wrote for four concurring justices. Chief Justice Madsen also concurred separately but stated that the plurality's "lengthy discourse on the economic loss rule and its new approach for determining when the rule applies is unnecessary." *Eastwood*, 170 Wn.2d at 402. But regardless of the differences of opinion in *Eastwood*,

> Justice Fairhurst's lead opinion combines with Justice Chambers' concurrence to comprise a majority of justices agreeing in *Eastwood* that the independent duty doctrine does not bar a tort claim merely because a contract, or other opportunity to allocate risk, also exists between the parties, as long as the tort claim arises independently of the contract or other similar relationship.

reasoned that such a rule was too broad because any loss arising from a contract could conceivably be characterized as an economic loss, especially under the broad definition of "[e]conomic damages" under RCW 4.56.250(1)(a).[4] *Eastwood*, 170 Wn.2d at 388. It further noted that a bright line rule prohibiting economic losses from being recoverable in tort does not comport with longstanding case law, citing the torts of intentional interference with another's contractual relations, wrongful discharge, failure of an insurer to act in good faith, fraudulent concealment or misrepresentation, negligent misrepresentation, breach of an agent's fiduciary duty to act in good faith, and negligent real estate appraisal as examples. *Eastwood*, 170 Wn.2d at 388.

Recognizing the shortcomings of the economic loss rule, the *Eastwood* court held that the more appropriate inquiry when determining if tort remedies are recoverable when a contractual relationship also exists is whether an independent legal duty exists, outside the parties' contractual relationship, imposing a duty on the tortfeasor. 170 Wn.2d at 389. Thus, the court held, "An injury is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Eastwood*, 170 Wn.2d at 389. The court named this inquiry the "independent duty doctrine." *Eastwood*, 170 Wn.2d at 398.

Although it reframed the appropriate inquiry and renamed the rule, the court noted that when determining

---

*Key Devel. Inv., LLC v. Port of Tacoma*, 173 Wn. App. 1, 19-20, 292 P.3d 833 (2013).

[4] RCW 4.56.250(1)(a) defines "[e]conomic damages" as "objectively verifiable monetary losses, including medical expenses, loss of earnings, burial costs, loss of use of property, cost of replacement or repair, cost of obtaining substitute domestic services, loss of employment, and loss of business or employment opportunities."

how a court can distinguish between claims where a plaintiff is limited to contract remedies and cases where recovery in tort may be available[, a] review of our cases on the economic loss rule shows that ordinary tort principles have always resolved this question. . . . The court determines whether there is an independent tort duty of care, and "[t]he existence of a duty is a question of law and depends on mixed considerations of logic, common sense, justice, policy, and precedent."

*Eastwood*, 170 Wn.2d at 389 (internal quotation marks omitted) (third alteration in original) (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn.2d 233, 243, 35 P.3d 1158 (2001)).

A majority of our Supreme Court subsequently recognized its adoption of the independent duty doctrine in *Jackowski* and *Elcon Construction, Inc. v. Eastern Washington University*, 174 Wn.2d 157, 165, 273 P.3d 965 (2012). Notably, the *Elcon* court recognized that

[t]o date, we have applied the [independent duty] doctrine to a narrow class of cases, primarily limiting its application to claims arising out of construction on real property and real property sales. "We have done so in each case based upon policy considerations unique to those industries. We have never applied the doctrine as a rule of general application outside of these limited circumstances." *Eastwood*, 170 Wn.2d at 416 (Chambers, J., concurring). Indeed, in *Eastwood* we directed lower courts not to apply the doctrine to tort remedies "unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise." *Eastwood*, 170 Wn.2d at 417 (Chambers, J., concurring).

174 Wn.2d at 165.

Here, Hendrickson's complaint included claims for negligent misrepresentation, lack of informed consent, and professional negligence in the context of the provision of veterinary services. No Supreme Court case has applied the independent duty doctrine to claims for lack of informed consent or professional veterinary negligence, and although the court has applied the doctrine in cases involving claims for negligent misrepresentation, those cases have exclusively involved real estate contracts and construction defects, not veterinary liability. *Elcon*, 174 Wn.2d at 165.

Accordingly, because our Supreme Court has specifically prohibited lower courts from applying the doctrine unless it has approved of the doctrine's application to a particular tort,[5] we hold that the trial court erred by dismissing Hendrickson's tort claims based on the former economic loss rule.[6] *Elcon*, 174 Wn.2d at 165.

In conclusion, we hold that the trial court properly dismissed Hendrickson's claims for reckless breach of bailment contract and emotional damages because no Washington court has held that such causes of action exist and if such major changes in the law are to be effected, they

---

[5] We have criticized this rule for its rigidity. *See Austin v. Ettl*, 171 Wn. App. 82, 96 n.15, 286 P.3d 85 (2012) (Van Deren, J., dissenting) (noting that our Supreme Court's rule "forbidding the trial courts and intermediate appellate courts from developing answers [regarding whether the independent duty doctrine applies to a particular tort claim] unnecessarily delays clarification of the law with regard to tort claims in the contract context."). But in addition to our Supreme Court's admonition against lower courts' independent analysis of the applicability of the independent duty doctrine in contexts not already approved by our Supreme Court, because the facts of this case are so removed from the context in which the doctrine has normally been applied, we decline to independently address whether the doctrine should be applicable in the context of veterinary liability.

[6] Hendrickson makes two additional arguments based on the former economic loss rule: that the "special relationship" exception to the rule applies here and that the loss of a dog is not an "economic loss" under the reasoning of *Alejandre*. Because we hold that the trial court erred in dismissing Hendrickson's claims under the former economic loss rule, we do not address these arguments.

Hendrickson also argues that the trial court should not have dismissed her lack of informed consent, negligent misrepresentation, and professional negligence claims on the merits, noting that this court can affirm on any basis supported by the record below. In its summary judgment motion, Tender Care argued that in the event the trial court did not dismiss Hendrickson's claims based on the former economic loss rule, the trial court should have dismissed her negligent misrepresentation and lack of informed consent claims as a matter of law. But because Tender Care made no argument to the trial court regarding Hendrickson's third tort claim—professional negligence—the trial court's ruling dismissing "[a]ll claims sounding in tort" appears to have been based solely on the former economic loss rule. CP at 273. On appeal, Hendrickson gives only passing treatment to the professional negligence claim, arguing simply that "Dr. Kern's declaration amply puts at issue the question of malpractice." Br. of Appellant at 23. And Tender Care does not respond to any of Hendrickson's arguments on appeal regarding the substance of the three tort claims. Accordingly, we decline to address the substance of Hendrickson's tort claims at this time. RAP 9.12. On remand, both parties will have the opportunity to argue their respective positions on the merits of these tort claims.

should be made by the legislature. However, because our Supreme Court has not specifically approved of the application of the independent duty doctrine to cases involving the torts at issue here or in cases of veterinary liability, we reverse the trial court's summary dismissal of Hendrickson's tort claims and remand for reconsideration of these issues.

QUINN-BRINTNALL, J.

We concur:

JOHANSON, A.C.J.

FEARING, J.