## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KAITLYN FLYNN AND KEVIN FLYNN,<br><br>    Appellants,<br><br>    v.<br><br>WOODINVILLE ANIMAL HOSPITAL, P.S., a Washington professional service corporation; NICHOLE K. FREI-JOHNSON, DVM and her marital community/domestic partnership; BLUEPEARL WASHINGTON PRACTICE ENTITY, P.C., doing business as BLUEPEARL SPECIALTY + EMERGENCY PET HOSPITAL of Kirkland; KENT J. VINCE, DVM, MSPVM, DACVS and his marital community/domestic partnership;<br><br>    Respondents. | No. 84106-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — After the death of the Flynns' dog that received care from two veterinary entities, the Flynns sued respondents asserting multiple claims, including corporate negligence and negligent infliction of emotional distress (NIED). The trial court granted respondents' joint motion for partial summary judgment dismissing claims for corporate negligence and NIED. The corporate negligence doctrine has not been applied to animal health care facilities in

Citations and pincites are based on the Westlaw online version of the cited material

Washington, and Washington law has never provided for NIED claims arising out of the negligent injury or death of an animal companion. Therefore, we affirm.

FACTS

Kaitlyn and Kevin Flynn acquired their pug, Clementine, in 2019. The Flynns owned an older pug named Comrade, who was Kevin's[1] emotional support animal until Comrade's death in 2020. Kevin suffers from general anxiety disorder for which he is under a doctor's care and prescribed medications. Three months before Comrade passed, Clementine assumed the role of providing emotional support to Kevin.

In January 2021, the Flynns told Woodinville Animal Hospital, P.S. (WAH) they were concerned Clementine might have a urinary tract infection. Over a period of three weeks, the Flynns continued to call WAH and bring Clementine to WAH for care. On January 19, 2021, WAH instructed the Flynns to take Clementine to BluePearl Specialty Emergency Pet Hospital[2] (BluePearl) because WAH feared that Clementine's bladder may have ruptured. Clementine underwent emergency surgery at BluePearl to repair her bladder. While recovering from surgery at BluePearl, Clementine went into septic shock. Clementine died the next morning. Following Clementine's death, Kevin experienced insomnia, inability to focus, and depression. He sought care from his psychiatrist who increased his medication dosages.

---

[1] We refer to Kevin Flynn by his first name for clarity because he and Kaitlyn share the same last name.

[2] Respondent BluePearl Washington Practice Entity, P.C. does business as BluePearl Specialty Emergency Pet Hospital of Kirkland.

The Flynns filed a complaint against BluePearl, Dr. Kent Vince, WAH, and Dr. Nichole Frei-Johnson.  The Flynns allege corporate negligence, negligent infliction of emotional distress (NIED), and breach of contract against both BluePearl and WAH.  The Flynns also allege professional negligence and NIED against both Vince and Frei-Johnson.

BluePearl and Vince filed a motion for partial summary judgment asserting that the corporate negligence doctrine only applies to full-service hospitals that treat humans, and NIED damages cannot be awarded for claims that arise out of the negligent death or injury of a pet.  The court granted the motion.  Then, by stipulated order, the court also dismissed corporate negligence and NIED claims against WAH and Frei-Johnson for the same basis while preserving the Flynn's right to appeal.[3]  The trial court then, over the objection of BluePearl and Vince, granted the Flynn's motion under RAP 2.3(b)(4) for finality and certification of both dismissal orders.  The Flynns appeal.

## DISCUSSION

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  CR 56(c).  A

---

[3] WAH and Frei-Johnson had moved to join the partial summary judgment motion to dismiss the corporate negligence and NIED claims.  The Flynns objected.  In its order granting the partial summary judgment motion, the trial court reviewed the motion to join and the Flynn's objection, but did not address that motion in its order granting the partial summary judgment motion.

superior court's decision on summary judgment is reviewed de novo. Boyd v. Sunflower Props. LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016).

Corporate Negligence Doctrine

The Flynns contend that the trial court erred as a matter of law when it dismissed the claims of corporate negligence against BluePearl and WAH. We disagree.

The doctrine of corporate negligence is based on a nondelegable duty that a hospital owes directly to its patients. Douglas v. Freeman, 117 Wn.2d 242, 248, 814 P.2d 1160 (1991). Four duties owed by a hospital under the doctrine of corporate negligence are: (1) to use reasonable care in the maintenance of buildings and grounds for the protection of the hospital's invitees; (2) to furnish the patient supplies and equipment free of defects; (3) to select its employees with reasonable care; and (4) to supervise all persons who practice medicine within its walls. Id. The standard of care hospitals are held to is that of an average, competent health care facility acting in the same or similar circumstances. Ripley v. Lanzer, 152 Wn. App. 296, 324, 215 P.3d 1020 (2009) (citing Pedroza v. Bryant, 101 Wn.2d 226, 233, 677 P.2d 166 (1984)). This standard is generally defined by the Joint Commission on Accreditation of Hospitals standards and the hospital's bylaws. Id. "Other decisions have found the standard of care for hospitals defined by statute." Douglas, 117 Wn.2d at 248-49 (citing Byerly v. Madsen, 41 Wn. App. 495, 504, 704 P.2d 1236 (1985); Schoening v. Grays Harbor Cmty. Hosp., 40 Wn. App. 331, 335, 698 P.2d 593 (1985).

4

In 1984, our Supreme Court adopted the doctrine of corporate negligence for the first time applying it to hospitals in Washington. Pedroza, 101 Wn.2d at 233. The Pedroza court discussed Illinois case Darling v. Charleston Cmty. Mem. Hosp., 33 Ill.2d 326, 211 N.E.2d 253 (1965), where the doctrine of corporate negligence was introduced into common law. Pedroza, 101 Wn.2d at 229. The court explained that Darling established the concept that a hospital had an independent responsibility to patients to supervise the medical treatment provided by members of its medical staff. Pedroza, 101 Wn.2d at 229 (citing Darling, 33 Ill.2d at 326). The Darling court determined that the hospital can be liable for its own negligence and not just through respondeat superior on the negligence of the physician. Id.

The Pedroza court explained that although Washington had not yet expressly adopted the fundamental principle of the theory, it had previously recognized that a hospital owed an independent duty of care to its patients. Pedroza, 101 Wn.2d at 232-33 (citing Pederson v. Dumouchel, 72 Wn.2d 73, 431 P.2d 973 (1967); Osborn v. Public Hosp. Dist. 1, 80 Wn.2d 201, 205, 492 P.2d 1025 (1972). In Pederson, the court held that a hospital violated the duty of care it owed its patients when it permitted an operation without the presence of a medical doctor in the operating room. Pederson, 72 Wn.2d at 80. In Osborn, the court stated that a hospital had a statutory duty with respect to patient care

independent of the duty of care chargeable to the patient's attending physician. Osborn, 80 Wn.2d at 205.[4]

The Flynns argue that under the Washington Administrative Code, veterinary medical facilities have similar construction and maintenance codes to medical facilities that treat humans. They similarly argue that veterinarians are held to the same expectations as physicians,

> particularly where they furnish not only the surgeon and primary care provider (here, Vince and Frei-Johnson), but the examination room, operating room, advanced diagnostic equipment, all nursing support, an entire recovery and intensive care unit for postoperative convalescence and monitoring, all supplies and equipment, and a building in which to house all medical minutiae, with all such services are billed directly by the hospital to the client.

While it may be true that society expects animal hospitals to care for animals similarly to how human hospitals provide care for humans, it is well established that animals are treated differently than humans under Washington law. Notably, our Supreme Court has just recently reiterated that pets, as a matter of law, are considered personal property. State v. Abdi-Issa, 199 Wn.2d 163, 171, 504 P.3d 223 (2022) (citing Sherman v. Kissinger, 146 Wn. App. 855, 870, 195 P.3d 539 (2008)).

In Sherman, this court held that the medical malpractice statute, chapter 7.70 RCW (which governs all civil actions for damages that occur as a result of health care), did not apply to the treatment of animals by veterinarians or

---

[4] The Flynns argue that Douglas extended the doctrine of corporate negligence from a hospital to a dental clinic. But the dental clinic at issue was operated by Providence Hospital. Indeed, the named defendants in the lawsuit were dental intern Mark Freeman and "Sisters of Providence in Washington, d/b/a Providence Medical Center." See Douglas, 117 Wn.2d at 242, 245.

veterinary clinics. Sherman, 146 Wn. App. at 860. This court concluded that "[b]ased on the plain and unambiguous language of chapter 7.70 RCW. . . the act applies only to human health care, and does not apply to veterinarians or veterinary clinics."[5] Id. at 867.

The Flynns ask this court to disregard Sherman, arguing that because the claim of corporate negligence is borne out of common law, the fact that chapter 7.70 RCW does not apply to veterinarians and veterinary hospitals does not matter in the instant case. However, in adopting the doctrine of corporate negligence, the Pedroza court did so within the context of hospitals that treated humans. Corporate negligence has only been applied to hospitals that treat humans.

The Flynns cite to Baechler v. Beaunaux, 167 Wn. App. 128, 135, 272 P.3d 277 (2012), for its holding that veterinary malpractice claims are treated much like those against medical malpractitioners based on the similarities in training, licensing, and credentialing. However, in that case, the court discussed whether veterinarian expert opinions were necessary to decide whether a veterinarian's practice fell below a reasonable standard of care to support a claim of negligence. Baechler, 167 Wn. App. at 135. The court stated,

> Doctors of Veterinary Medicine are professionals who, like other professionals, must be properly schooled, pass an examination, and then be licensed. . . . In short, veterinarians practice a profession that requires extensive scientific training, clinical

---

[5] The Legislature also differentiates veterinarians and physicians in other chapters of the RCW. See ch. 18.92 RCW (applying to "Veterinary medicine, surgery, and dentistry" while chapter 18.71 RCW applies to "Physicians"); see also ch. 70.41 RCW (governing "Hospital Licensing and Regulation," but not mentioning veterinary hospitals or animals).

experience, and a license from the state before they can practice. Their opinions and the opinions at issue here (diagnosis of disease and its proper management) are then expert opinions and necessarily subject to criticism only by other veterinarians.

Id. at 133-34. The Baechler court held, in the context of expert opinions, veterinarians, like physicians, are professionals, and their expert opinions regarding standard of care are necessary in negligence cases against veterinarians.

Additionally, the Flynns cite to a Ninth Circuit case, Clark v. United Emergency Animal Clinic, Inc., 390 F.3d 1124 (9th Cir. 2004), to support its contention that veterinarians are similar to physicians. In that case, the Ninth Circuit held that, under the language of the Fair Labor Standards Act (FLSA), veterinarians were analogous to physicians and other health care providers and thus fell within the practice of medicine exception to the salary basis requirement and were exempt from the overtime requirements of the FLSA. Clark, 390 F.3d at 1124. However, this holding is specific to the language of the FLSA and does not help the Flynns. Again, while physicians and veterinarians are comparable in some respects, this does not change the fact that Washington treats animals as property under the law.

The Flynns also turn to civil Washington Pattern Jury Instruction (WPI) 105.02.02, on corporate negligence, underscoring how it allows for a fill-in-the-blank option for when a hospital owes an independent duty of care. The Flynns point to the instruction's note on use directions that the instruction's blank bracket is for "such other duty as the court finds legally applies and is supported by the evidence." 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:

8

CIVIL 105.02.02 (7th ed. 2022) (WPI).  But the comment to WPI 105.02.02 only discusses cases and standards of care involving full service hospitals providing care to humans, referencing Pedroza, Douglas, and Osborn, among other cases. Id.  It specifies that Washington decisions have held that the standard of care may be defined by statute and that the "second paragraph of the instruction defines the duty of reasonable care using the language of RCW 7.70.040."  Id. As stated previously, chapter 7.70 RCW applies only to human health care, and does not apply to veterinarians or veterinary clinics.

As this court observed in 2006, "although we have recognized the emotional importance of pets to their families, legally they remain in many jurisdictions, including Washington, property."  Mansour v. King County, 131 Wn. App. 255, 267, 128 P.3d 1241 (2006). Two years later, this court held that the medical malpractice "act applies only to human health care, and does not apply to veterinarians or veterinary clinics."  Sherman, 146 Wn. App. at 867.  The legislature "'is presumed to be aware of judicial interpretation of its enactments,' and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language." Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 147, 94 P.3d 930 (2004) abrogated on other grounds (quoting Friends of Snoqualmie Valley v. King County Boundary Review Bd., 118 Wn.2d 488, 496-97, 825 P.2d 300 (1992)).

The legislature is in the best position to determine whether the corporate negligence doctrine should be extended to reach animal hospitals.  We conclude

the trial court did not err in dismissing the claim of corporate negligence as a matter of law on summary judgment.

Negligent Infliction of Emotional Distress

The Flynns next contend that the court erred in dismissing their NIED claims. We disagree.

The tort of negligent infliction of emotional distress encompasses three elements: (1) the emotional distress is within the scope of foreseeable harm of the negligent conduct, (2) the plaintiff reasonably reacted given the circumstances, and (3) objective symptomatology confirms the distress. Repin v. State, 198 Wn. App. 243, 263-64, 392 P.3d 1174 (2017).

"[I]t is well established that a pet owner has no right to emotional distress damages or damages for loss of human-animal bond based on the negligent death or injury to a pet." Sherman, 146 Wn. App. at 873 (citing Pickford v. Masion, 124 Wn. App. 257, 260, 98 P.3d 1232 (2004)). In Pickford, the plaintiff appealed a summary judgment dismissal of her claims for NIED she suffered when other dogs attacked and mauled her pet dog. Pickford, 124 Wn. App. at 258. The Pickford court held that the plaintiff was not entitled to recover damages for NIED or damages for loss of companionship and the human-animal relationship for the negligent death or injury of a pet. Id. at 260.

The Flynns argue that Pickford is significantly dissimilar to the instant case for multiple reasons. First, the pet in Pickford was injured but did not die, whereas Clementine died. Second, Clementine was not just a pet, but an

emotional support animal. Third, the defendants in the instant case are experts and not lay defendants as in Pickford. Fourth, the plaintiff and defendants in Pickford were strangers to each other; whereas the Flynns hired the respondents to provide a service. Those distinctions do not change the material similarity that the Flynns and the plaintiff in Pickford both filed NIED claims based on animals that are considered property in Washington.

In Hendrickson, the court rejected a dog owner's request for emotional damages under a breach of contract claim when the dog died following treatment by an animal hospital. Hendrickson v. Tender Care Animal Hosp. Corp., 176 Wn. App. 757, 760, 312 P.3d 52 (2013). The court observed that the very same cases that recognize the existence of emotional suffering resulting from the injury to or loss of a companion animal, also "uniformly recognize the historic treatment of those animals as property under Washington law and the limitation on emotional distress damages for such injury except in cases of malicious or intentional infliction of injury to those animals." Id. at 767. The court reasoned that if there is to be change of the common law, the court believed it to be a more prudential approach for the legislature to consider the matter prior to such a change occurring. Id. (citing Gaglidari v. Denny's Restaurants, Inc., 116 Wn.2d 426, 815 P.2d 1362 (1991)).

To support their argument that Clementine as an emotional support animal was a "canine of a different legal pedigree," the Flynns cite a 2020 Fair Housing and Equal Opportunity notice that explains certain obligations of housing providers under the Fair Housing Act with respect to interactions with people who

have service or "support" animals.[6]  However, a legal recognition that animal owners may have rights in a different context does not establish a right to claim emotional distress based on negligent acts that caused an animal's death or injury.

For example, in Abdi-Issa, a recent criminal case, the defendant intentionally harmed the victim's dog and was convicted of animal cruelty. Abdi-Issa, 199 Wn.2d at 168.  The defendant argued that because an animal is not a person, animal cruelty could not qualify as a domestic violence offense because only a human, and not an animal, can be a victim of domestic violence.  Id. at 171.  In rejecting that argument, the Supreme Court recognized that the legislature intends that perpetrators of domestic violence not be allowed to further terrorize and manipulate their victims by using the threat of violence toward pets.  Id. at 173.  The court reasoned that many of the enumerated domestic violence crimes are against property and that "'[p]ets, as a matter of law, are considered personal property.'"  Id. at 180 (Stephens, J., concurring in part, dissenting in part) (quoting Abdi-Issa, 199 Wn.2d at 171).

The Flynns contend that this is a case of first impression because Clementine was not a pet, but an emotional support animal.  The Flynns' contention appears to suggest that because Clementine was an emotional support animal, emotional distress negligently inflicted because of her death rises

---

[6] Off. of Fair Hous. & Equal Opportunity, U.S. Dep't of Hous. & Urb. Dev., Notice No. FHEO-2020-01 (Jan. 28, 2020) (distinguishing between (1) "service animals," and (2) "support animals" that do work, perform tasks, provide assistance, and/or provide therapeutic emotional support for individuals with disabilities), https://www.hud.gov/sites/dfiles/PA/documents/HUDAsstAnimalNC1-28-2020.pdf.

above claims of emotional distress from the deaths of ordinary pets.  However, the gravamen is not the degree of the emotional connection between the owner and its animal, but the fact that animals, whether they are pets or emotional support animals, are still considered property—even when there is a profound emotional connection.

The trial court did not err in dismissing the NIED claims.

Attorney Fees

We decline to grant WAH's and Frei-Johnson's request for attorney fees because they did not provide a basis for which they are entitled such fees.  RAP 18.1(a) permits an award of attorney fees and expenses on appeal "[i]f applicable law grants to a party the right to recover" them.  "Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs."  Wachovia SBA Lending, Inc. v. Kraft, 165 Wn.2d 481, 493, 200 P.3d 683 (2009).

CONCLUSION

We affirm the trial court dismissing all the corporate negligence and NIED claims by granting the motion for partial summary judgment and entering the stipulated order.

_____
Coburn, J.

WE CONCUR:

_____
Díaz, J.

_____
Bowman, J