[No. 12584-2-I.   Division One.   December 30, 1985.]

DAVID P. ALLEMEIER, *Appellant,* v. THE UNIVERSITY OF WASHINGTON, *Respondent.*

466

*Thomas C. Evans, Evans, Quimby, Hall, Holman & Noble, Inc., P.S.,* and *Gary Wolfstone,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Sally G. Tenney, Assistant; Harold C. Fosso* and *Julin, Fosso & Sage,* for respondent.

CORBETT, C.J.—David P. Allemeier appeals from a judgment of dismissal entered upon a defense verdict in favor of the State of Washington, finding that the State was not negligent for an accident on the University of Washington (UW) campus causing Allemeier serious injury. The State cross–appeals an order of partial summary judgment finding that the road where the accident occurred was a public roadway. We affirm the judgment of dismissal and reverse in part the order of partial summary judgment.

On September 22, 1980, Allemeier and Robert House were University of Washington football team members liv-

ing at the Conibear Shell House on the UW campus. Around 10 p.m. they went in House's jeep to get milk shakes at the Baskin & Robbins located at the northeast end of the campus. House was driving and Allemeier was his only passenger. They left the Baskin & Robbins around 10:40 p.m. proceeding back along Clark Road and then via Canal Road, a route which they frequently took. Where Canal makes a turn toward Conibear, the jeep began to lose traction. It proceeded off the roadway, rolled over, and flipped several times. House walked away from the accident, but Allemeier was seriously injured.

Gordon W. Gahnberg, the chief plant engineer at the UW, described Canal Road as a service roadway which begins at Clark Road, runs south for several hundred yards, and turns west by a long, obvious, gradual curve. Gahnberg described this curve, where the accident occurred, as "long enough to accommodate large construction vehicles in excess of 50 tons gross weight." It then straightens and connects with Walla Walla Road. It is primarily used by the physical plant employees and by contractors working on the athletic fields on the east edge of the campus. The public has never been given unrestricted access to the road. Five or six times a year during home football games, buses and certain Tyee Club members are issued permits to use Canal Road to relieve traffic congestion around the football stadium on Montlake Boulevard. Gahnberg stated that the road was built over a sanitary landfill constructed in the mid–1960's with a rock and crushed gravel surface and has always been closed to the public. It is not lit or paved but is annually regraveled, graded, and rolled to prevent soft spots or chuckholes and so loose gravel is at a minimum. The road is approximately 20 to 24 feet wide.

Before reaching Canal from the northeast, there were two signs on Clark Road which indicated that the campus speed limit was 20 m.p.h. Pipe gates installed at the entrances to Canal Road were intended to restrict the road's usage to service vehicles. Posted alongside the gates at the entrance to Canal off Clark was a 30– by 24–inch sign which reads

"Closed to All Traffic Except Service Vehicles and Other Authorized Vehicles." The purpose of the gates was to restrict access to the road to service vehicles and prevent unauthorized cars from circumventing the automatic gates of the surrounding roads enabling them to enter the parking lots without paying. Campus police tried to keep the gates locked, but several times throughout the day they were opened by unknown persons. The police would often do nothing when they saw the gates open. House was aware of the signs and the gates. He believed his use of the road as a football team member living nearby was authorized. He never remembered the gates being closed.

Gahnberg, Jeraldine M. McCray, transportation officer at the UW, and Donald James, football coach, stated that football team members were not authorized to use Canal Road. Rather, team members with cars who were staying at Conibear were issued parking permits and magnetic key-cards so they could park in the E-8 lot next to Conibear. The team members were expected to take Walla Walla Road through the automatic gate to Wahkiakum Lane and onto Montlake Boulevard. At the time parking permits and keycards were issued to House and Allemeier, Walla Walla Road was being repaved, and the football players were notified by a memorandum dated July 31, 1980, that they could temporarily use Canal Road. Walla Walla was reopened on September 5, 1980. After this date, no one was given permission to use Canal Road to gain access to the E-8 lot.

On August 6, 1981, Allemeier filed a complaint against the State for negligence, breach of contract, and breach of landlord–tenant relationship.

On March 19, 1982, the trial court granted Allemeier's motion for partial summary judgment. The court ruled that at the time of the accident Clark and Canal Roads were public roadways as defined by RCW 47.04.010(26).[1] The

---

[1] RCW 47.04.010(26) provides:

"'Highway.' Every way, lane, road, street, boulevard, and every way or place in

court also ruled that the UW was required by law to comply with the *Manual on Uniform Traffic Control Devices* (MUTCD). At trial, which commenced on October 11, 1982, the court refused to set aside the ruling that Canal Road was a public road.

During cross examination, Allemeier was handed a settlement letter written by one of his attorneys to Allemeier's insurance company. On page 3 of the letter was the statement that House was the sole cause of the accident. Allemeier acknowledged that this statement was made by his attorney. He moved to strike the related question and answer and to repair the damage with a curative instruction. The court subsequently granted the motion to strike but denied the curative instruction on the basis that it would call attention to the testimony rather than cure any damage done.

We first discuss the State's cross appeal because it is in part dispositive of one of Allemeier's assignments of error. We find that the trial court erred in entering an order of partial summary judgment, ruling pursuant to RCW 47.04-.010(26) that the road in question is a public roadway.

■ The only case construing this statutory provision is *Hall v. McDowell,* 6 Wn. App. 941, 497 P.2d 596 (1972). There, the court determined that Merrill Lake Road, a United States Forest Service road, was a public highway. The court stated: "Although there are commercial restrictions upon its use, it is used by the public for access to Merrill Lake and certain portions of the Gifford Pinchot National Forest." *Hall,* at 945. The court went on to state that generally, forest development roads are open to the public for vehicular travel and that the stated objective of the United States Forest Service is to apply Washington state traffic laws to these roads. *Hall,* at 945. *Hall* is distinguishable because it appears that the public used Merrill Lake Road with the acquiescence of the forest service.

---

the state of Washington open as a matter of right to public vehicular travel both inside and outside the limits of incorporated cities and towns;"

Here, alternatively, Canal Road was used by the public despite attempts to restrict its usage to only authorized vehicles.

Further, RCW 47.04.010(26) states that in order to be a "highway" the road must be "open as a matter of right to public vehicular travel". That is clearly not the case here. Only authorized vehicles had the "right" to use Canal Road. The court erred in ruling that Canal Road was a public roadway. We thus hold for the State on its cross appeal.

■ Allemeier assigns error to the court's failure to grant his motions for summary judgment and a directed verdict on the issue of negligence per se. A motion for summary judgment under CR 56(c) should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The court must consider all of the facts submitted and reasonable inferences therefrom in the light most favorable to the nonmoving party. The court should grant the motion only if, from all of the evidence, reasonable persons could reach but one conclusion. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Spurrell v. Block,* 40 Wn. App. 854, 860, 701 P.2d 529 (1985). In reviewing the trial court's decision, this court engages in the same inquiry as did the trial court. *Wilson,* at 437; *Styner v. England,* 40 Wn. App. 386, 388, 699 P.2d 234 (1985).

> In considering a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party. The motion should be granted only if it is determined that there is no evidence or reasonable inferences therefrom which would sustain a jury verdict in favor of the nonmoving party.

*Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 73, 684 P.2d 692 (1984). *Lettengarver v. Port of Edmonds,* 40 Wn. App. 577, 579, 699 P.2d 793 (1985).

■ Allemeier based his motions upon what he considered the State's violation of the MUTCD which, under cer-

tain circumstances, requires larger and different colored signs to indicate the speed limit and that a road is closed. It is undisputed that the MUTCD applies only to public roads. *E.g.,* MUTCD § 2A–2. The court therefore did not err in denying summary judgment and a directed verdict because, as we have held on the cross appeal, Canal Road was not a public road. Allemeier raised for the first time at oral argument a contention that the MUTCD required signing on the public roads leading to Canal Road. He has not supported this argument with any authority. Further, this is not an issue of constitutional magnitude, and so we will not consider it for the first time on appeal. *Wilson,* at 440; *Evans v. Steinberg,* 40 Wn. App. 585, 588, 699 P.2d 797 (1985).

Assuming arguendo that Canal Road was a public road to which the MUTCD applies, there was no negligence per se. In determining whether the violation of a public law or regulation should be considered in deciding liability, *i.e.,* whether there was negligence per se, Restatement (Second) of Torts § 286 (1965) properly states the rules:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> (a) to protect a class of persons which includes the one whose interest is invaded, and
>
> (b) to protect the particular interest which is invaded, and
>
> (c) to protect that interest against the kind of harm which has resulted, and
>
> (d) to protect that interest against the particular hazard from which the harm results.

*Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 257, 501 P.2d 285 (1972); *Solomonson v. Melling,* 34 Wn. App. 687, 690–91, 664 P.2d 1271 (1983).

The type 3 barricade which Allemeier contends is required at the entrance to Canal Road is described in part 6 of the MUTCD, "Traffic Controls for Street and Highway Construction and Maintenance Operations". The purpose

of part 6 is clearly stated: "These principles and standards are directed to the safe and expeditious movement of traffic through construction and maintenance zones and to the safety of the work force performing these operations." MUTCD § 6A–1. Further, MUTCD § 6C–9 specifically provides: "On construction projects, when a road section is closed to traffic, Type III barricades shall be erected at the points of closure." Clearly, there was no construction or maintenance project under way on Canal Road at the time of the accident. Therefore, Allemeier was not within the class of persons whose interest is to be protected by part 6 of the MUTCD, and his claim of negligence per se must fail. When the court determined whether to grant summary judgment on the issue of negligence per se, this information was before it in the form of affidavits from two licensed professional engineers. Looking at the evidence in the light most favorable to the nonmoving party, the State, it was reasonable to find that a question of fact remained. Thus, the denial of summary judgment and the later directed verdict were proper.

Allemeier also assigns error to the court allowing cross examination regarding the statement made in the settlement letter written by his attorney to Allemeier's insurance company. The letter itself was not offered in evidence or placed before the jury. Allemeier argues that under ER 408, the statement that House was solely responsible for the accident was inadmissible. ER 408 provides *inter alia* that evidence of conduct or statements made in compromise negotiations is not admissible unless the evidence is otherwise discoverable. The State argues that the statement was admissible under ER 801(d)(2) as an admission by a party–opponent.

We do not reach the merits of this issue because Allemeier failed to provide us with a sufficient trial record. The party seeking review has the burden of perfecting the record so that this court has before it all of the evidence relevant to the issue. RAP 9.2(b); *State v. Jackson,* 36 Wn. App. 510, 516, 676 P.2d 517, *aff'd,* 102 Wn.2d 689, 689 P.2d

76 (1984). Without the trial record, it is not possible to view the statement in context with the rest of the evidence presented so as to determine whether Allemeier was prejudiced. Error without prejudice is not grounds for reversal. *Thomas v. French,* 99 Wn.2d 95, 104, 659 P.2d 1097 (1983).

Allemeier finally alleges that the trial court erred in denying his motion for summary judgment on the issue of common law negligence. Again, we do not have enough of the record before us to decide this issue.

Affirmed in part, reversed in part.

SWANSON and WEBSTER, JJ., concur.

Review denied by Supreme Court March 21, 1986.