[No. 24221-8-III. Division Three. May 25, 2006.]

BERNADETTE WOMACK, *Individually, as Fiduciary, as Personal Representative, and as Special Guardian*, ET AL., *Appellants*, v. RUSTY VON RARDON ET AL., *Respondents*.

*Adam P. Karp*, for appellants.

*David M. Kerwin* on behalf of the Animal Legal Defense Fund, amicus curiae.

¶1 Brown, J. — Bernadette Womack received a $5,000 general damages award for emotional distress in a default judgment against Rusty Rardon, his parents, and Jayson Anderson due to the malicious burning of her cat, Max, and her son's harassment. Ms. Womack appeals unopposed, contending the trial court improperly measured her damages and dismissed her private nuisance, outrage, and statutory waste claims. The Animal Legal Defense Fund, amicus, joins in the measure of damages claim. We affirm except for the judgment interest rate and, in doing so, hold a new action and remedy for malicious injury to a pet exists in Washington State.

## FACTS

¶2 Late on July 20, 2003, Rusty Rardon, Jason Brumback, and Jayson Anderson took Max from Ms. Womack's front porch to a nearby school and using gasoline set him on fire. Max suffered first, second, and third degree burns. The cat was soon euthanized. In juvenile court, Rusty and Jason were ordered to pay restitution for animal cruelty to a Spokane animal care organization. Both boys were ordered to have no contact with the Womacks but violated that order.

¶3 Ms. Womack sued Rusty, Jason, and their parents for 16 liability claims with alternatives (see note 1 for claims surviving summary judgments). Ms. Womack alleged emotional distress because of Max's abuse and her son's harassment by Rusty and Jason. Ms. Womack sought economic, noneconomic, and special damages for each claim except for statutory waste, where she claimed "treble intrinsic" damages, costs, and attorney fees. Clerk's Papers (CP) at 216. The prayer for relief on each claim specified "subject to proof and modification at trial." CP at 216-17.

¶4 The Rardons defaulted. The Brumbacks successfully asked for summary dismissal for 9 of the 16 claims, including private nuisance, statutory waste, and outrage.[1] Later, the Brumbacks settled and were dismissed with prejudice. Later still, Mr. Anderson's role was discovered and he was added as a defendant in a second amended complaint. Finally, Mr. Anderson defaulted.

¶5 In February 2005, the trial court rejected Ms. Womack's proposed default papers, writing "I am not in a position to enter a Judgment, or Findings of Fact and Conclusions of Law that run contrary to my previous orders relating to causes of action for which relief cannot be granted." CP at 239. The court set a March date to determine "if the relief requested, i.e., the damages have supporting documentation." *Id.* We do not know what occurred on the March date set by the court.

¶6 In May 2005, the court entered a document entitled "Findings of Fact and Conclusions of Law and Judgment Summary." CP at 253. The court adopted "by reference" certain paragraphs of the second amended, but unverified, complaint to establish jurisdiction, parties, venue, and general allegations.[2] *Id.* The document does not specify the claims supporting liability, but the court found in "Other" findings the events resulted in Ms. Womack's suffering "feelings of guilt, loss and grief, causing her sleepless nights and depressive periods." *Id.* at 254. Further, the court found Ms. Womack temporarily required medication partly due to the described events.

---

[1] The other claims dismissed were simple negligence (alternative to reckless and intentional conduct claims with Max as victim), loss of companionship, wrongful death, predeath pain and suffering, breach of fiduciary duty, and interference with fundamental interests. The surviving claims were simple negligence (alternative to reckless and intentional conduct claims with Ms. Womack as victim), gross negligence, trespass to chattels, conversion, statutory vicarious liability (for parents), negligent supervision (for parents), and negligent infliction of emotional distress.

[2] We disapprove of incorporating findings by reference. *See* CR 52(a); *Peoples Nat'l Bank of Wash. v. Birney's Enters., Inc.,* 54 Wn. App. 668, 669-70, 775 P.2d 466 (1989).

¶7 The court concluded Ms. Womack's "claims for unliquidated damages were subject to an evidentiary hearing which included the plaintiffs testimony on April 27, 2005." *Id.* at 254. The court partly reasoned, "[a]lthough Max was a beloved family pet providing comfort and companionship to the Womack family, market value can be established for similarly situated two-year-old tomcats who also provide similar comfort and companionship to their owners." *Id.* The court concluded Ms. Womack's "unliquidated claims for damages" included statutory attorney fees and costs and set amounts not disputed here. *Id.* at 255. Finally, the court concluded Ms. Womack's "claims for unliquidated damages" based on the "[v]alue of Max and Bernadette Womack's emotional distress; [were] $5,000.00." *Id.*

¶8 The judgment summary restated the statutory attorney fees and costs, then specified "Unliquidated Damages[:] $5,000.00." *Id.* at 255. Without explanation, postjudgment interest was set at 3.198 percent. Ms. Womack's appeal is unopposed.

## ANALYSIS

### A. Summary Judgments

¶9 The issue is whether the trial court erred in granting summary judgment dismissal of Ms. Womack's private nuisance, tort outrage, and statutory waste claims.

¶10 We review summary judgment orders de novo, engaging in the same inquiry as the trial court. *Ellis v. City of Seattle,* 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is proper if, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine material fact issue exists and the movant is entitled to judgment as a matter of law. CR 56(c); *Ellis,* 142 Wn.2d at 458.

¶11 It is the appellant's responsibility to provide the necessary record. *Allemeier v. Univ. of Wash.,* 42 Wn.

App. 465, 472-73, 712 P.2d 306 (1985); RAP 9.2(b). The failure to provide a necessary record undermines our means to properly review the alleged errors. In this unopposed appeal, we are limited by the record before us.

¶12 First, we analyze Ms. Womack's private nuisance claim. "Nuisance is 'a substantial and unreasonable interference with the use and enjoyment of land.'" *Grundy v. Thurston County,* 155 Wn.2d 1, 6, 117 P.3d 1089 (2005) (quoting 1 WILLIAM H. RODGERS, JR., ENVIRONMENTAL LAW § 2.2, at 33 (1986)). RCW 7.48.120 defines nuisance as "unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others . . . or in any way renders other persons insecure in life, or in the use of property." "A nuisance 'which affects equally the rights of an entire community or neighborhood' is a public nuisance." *Grundy,* 155 Wn.2d at 6-7 (quoting RCW 7.48.130). All other nuisances are private. RCW 7.48.150.

¶13 To be actionable, the nuisance must be "'injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property.'" *Grundy,* 155 Wn.2d at 7 (quoting RCW 7.48-.010). "Such action must be brought by any person whose property is . . . injuriously affected or whose personal enjoyment is lessened by the nuisance." RCW 7.48.020.

¶14 Here, Ms. Womack suffered a loss, but not a loss related to land or property fixed to the land. No appellate court has applied nuisance to the death of an animal. Cases in Washington involving an animal and nuisance are situations where the animal is the nuisance. At best, an Oregon court held an animal injuring or killing another animal is a nuisance. *Lockett v. Hill,* 182 Or. App. 377, 51 P.3d 5, 8 (2002). Our facts are dissimilar to *Lockett.* Considering all, the trial court did not err in dismissing the nuisance claim.

¶15 Next, we turn to the outrage claim. The tort of outrage requires proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of

emotional distress, and (3) plaintiff's resulting actual severe emotional distress. *Kloepfel v. Bokor,* 149 Wn.2d 192, 195, 66 P.3d 630 (2003) (citing *Reid v. Pierce County,* 136 Wn.2d 195, 202, 961 P.2d 333 (1998)). Intentional infliction of emotional distress claims must be predicated on behavior " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Kloepfel,* 149 Wn.2d at 196 (emphasis omitted) (quoting *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291 (1975)).

¶16 The summary judgment required Ms. Womack to establish she suffered severe emotional distress and the defendants intended, rather than negligently brought about, that distress. The required emotional distress "must be more than 'transient and trivial emotional distress' which is 'a part of the price of living among people.' " *Kloepfel,* 149 Wn.2d at 198 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965)).

¶17 What happened to Max was deplorable, but the record does not sufficiently establish the required intent or the necessary severity. Moreover, the trial court, after an evidentiary hearing not before us, did find liability among the remaining liability theories. We are not persuaded the damages awarded would differ under a different liability theory, except for treble damages in the case of statutory waste. While distressing, the trial court could have decided the harm was not intended or was not sufficiently severe. Thus, the court did not err in dismissing the outrage claim.

¶18 Finally, Ms. Womack contends statutory waste under RCW 4.24.630 is apt. We disagree. Plainly, the statute requires a showing the defendant "wrongfully" injured "personal property or improvements to real estate on the land." RCW 4.24.630(1). Ms. Womack asserts the language "personal property" can be read independently in its sentence. However, the statute inclusively reads, "personal property . . . on the land." In other words, the personal property must be attached to the real property in

order for the statute to apply. *See Colwell v. Etzell,* 119 Wn. App. 432, 438, 81 P.3d 895 (2003) (RCW 4.24.630(1) "is precisely and unambiguously worded"). Since a cat is free to roam and is not attached to real property, RCW 4.24.630 does not apply. Accordingly, the trial court did not err in dismissing this claim.

### B. Measure of Damages

¶19 The next issue is whether the trial court erred in measuring damages. Ms. Womack contends the court incorrectly considered Max's fair market value. Ms. Womack and amicus argue Max's intrinsic value, his value to Ms. Womack, is the measure of damages, an argument we note is off-point to the legal issue involved.

¶20 The court awarded Ms. Womack $5,000 in "unliquidated damages" for "[v]alue of Max and Bernadette Womack's emotional distress." CP at 255. Ms. Womack sought economic, noneconomic, and special damages for her remaining claims. It is unclear how the court divided the $5,000 or what occurred at the evidentiary hearing. The term "unliquidated" appears inapt because generally that term is used when deciding prejudgment interest issues. The court may have intended to say "unsegregated" rather than unliquidated. The court may have intended to combine Ms. Womack's distress over Max's suffering with the distress she felt over her son's harassment. The court may have recognized the limited fair market value for a pet like Max. We decline to speculate, and as noted above and reasoned below, it matters not.

¶21 The court's failure to enter more specific findings as to material facts is equivalent to a finding against Ms. Womack, who has the burden of proof. *Pacesetter Real Estate, Inc. v. Fasules,* 53 Wn. App. 463, 475, 767 P.2d 961 (1989). In any case, damages questions are usually discretionary and therefore for the trier of fact, so long as damages fall within the range of relevant evidence. *Rorvig v. Douglas,* 123 Wn.2d 854, 861, 873 P.2d

492 (1994). Generally, the appropriate measure of damages for a given cause of action is a question of law, reviewed de novo. *Fisher Props., Inc. v. Arden-Mayfair, Inc.,* 106 Wn.2d 826, 843, 726 P.2d 8 (1986). Here, the remaining causes of action sound in negligence, trespass to chattel, conversion, and negligent infliction of emotional distress. Ms. Womack's arguments for damages miss the point.

¶22 Division Two of this court affirmed a summary dismissal of a negligent infliction of emotional distress claim because the theory has not been extended to pet injuries. *Pickford v. Masion,* 124 Wn. App. 257, 262-63, 98 P.3d 1232 (2004). The *Pickford* court observed, "damages are recoverable for the actual or intrinsic value of lost property but not for sentimental value." *Id.* at 263 (citing *Mieske v. Bartell Drug Co.,* 92 Wn.2d 40, 45-46, 593 P.2d 1308 (1979)). *See also Dillon v. O'Connor,* 68 Wn.2d 184, 186-87, 412 P.2d 126 (1966) (negligence judgment reversed where jury was instructed to consider more than the "fair market value" of a dog run over by a car). Notably, the *Pickford* court left open whether malicious injury to an animal may be the cause of emotional distress damages in Washington because their facts, like the *Dillon* facts, raised solely negligent injury. *Pickford,* 124 Wn. App. at 261.

¶23 Here, the facts are distinguishable from those found in *Dillon* and *Pickford* because more than negligence is at issue. This evidence supports the implicit finding of malicious injury to Ms. Womack's pet. The incorporated general allegations include sufficient facts to find both malicious conduct toward Ms. Womack's pet and her resulting emotional distress, if not outrageous conduct as analyzed above.

¶24 For the first time in Washington, we hold malicious injury to a pet can support a claim for, and be considered a factor in, measuring a person's emotional distress damages. The damages are consistent with actual and intrinsic value concepts as found in *Pickford* because, depending upon the particular case facts, harm may be caused to a person's emotional well-being by malicious injury to that person's

pet as personal property. We do not interpret the trial court's final reference to value as limiting the measure of damages to pet fair market value. Thus, we reject Ms. Womack's contrary contention and supportive arguments. The trial court's award for emotional distress damages is akin to a general award for pain and suffering. The court is not required to explain its weighing process or segregate the particular factors it considers so long as the award is reasonably within the range of evidence. It is.

¶25 In sum, the trial court properly considered the malicious harm to Max combined with Ms. Womack's distress over her son's harassment when deciding general emotional distress damages. Therefore, the trial court did not err in considering "Value of Max and Bernadette Womack's emotional distress." CP at 255.

## C. Interest Rate

¶26 The issue is whether the trial court erred in setting postjudgment interest at 3.198 percent. Ms. Womack contends the interest rate should have been 5.125 percent, two points above the average bill rate for 26-week treasury bills.

¶27 Postjudgment interest, unlike prejudgment interest, is mandatory under RCW 4.56.110. Judgments founded on tortious conduct

> shall bear interest from the date of entry at two percentage points above the equivalent coupon issue yield, as published by the board of governors of the federal reserve system, of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the date of entry.

RCW 4.56.110(3). No explanation is given for how the court arrived at 3.198 percent. In April, the month preceding judgment, the average coupon equivalent yield from the first auction of 26-week treasury bills was 3.125 percent.

*Washington State Bar News,* May 2005.[3] Accordingly, the mandatory postjudgment rate should be 5.125 percent, not 3.198 percent. We remand for correction of the interest rate. Ms. Womack does not qualify for attorney fees under RAP 18.1(b).

¶28 Affirmed, except as to the interest rate.

SCHULTHEIS, A.C.J., and KATO, J., concur.

---

[3] *Available at* http://www.wsba.org/media/publications/barnews/2005/maydefault .htm (last visited May 25, 2006).