FILED
COURT OF APPEALS
DIVISION II

2014 JUL -8 AM 10: 09

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Marriage of:

JOHN ERIC NELSON,

               Appellant,

  v.

CONNIE LOUISE ACKER,

               Respondent.

No. 44263-9-II

UNPUBLISHED OPINION

HUNT, J. — John Eric Nelson appeals the trial court's modified child support order requiring him to pay postsecondary educational support for his son and daughter. He argues that the trial court (1) erred in ordering him to pay retroactive postsecondary educational support when the children failed to comply with the RCW 26.19.090 conditions (which, he argues, required that he be given documentation of proof of enrollment, class registration, and grades); (2) incorrectly computed his October 2009 through November 2012 income for support purposes; and (3) failed to hold his former wife, Connie Louise Acker, in contempt of court for noncompliance with a subpoena duces tecum.[1] Nelson further claims that the Washington State Division of Child Support (DCS) erred when it placed a lien on his property and filed a "Notice of Report to Credit Bureaus"[2] while this case was pending on appeal. We affirm.

---

[1] Nelson also asserts that he is entitled reimbursement of his postsecondary support payments for his daughter and should be allowed to remove her from his health insurance plan after she legally emancipated herself from him.

[2] Br. of Appellant at 17.

No. 44263-9-II

## FACTS

On December 8, 1997, John Eric Nelson and Connie Louise Acker dissolved their marriage, and the trial court entered an order of support for their daughter, born February 11, 1991, and their son, born March 8, 1994. This child support order contained a postsecondary education provision allowing a request for postsecondary education support before a child reached the age of majority or graduated from high school,

> 3.12  TERMINATION OF SUPPORT
> Support shall be paid:
> [U]ntil the child(ren) reach(es) the age of 18 or as long as the child(ren) remain(s) enrolled in high school, whichever occurs last, except as otherwise provided below in Paragraph 3.13.
>
> 3.13  POST SECONDARY EDUCATIONAL SUPPORT
> The right to petition for post secondary support is reserved, provided that the right is exercised before support terminates as set forth in paragraph 3.12.

Sealed Clerk's Papers (CP) at 8.

On March 7, 2012, Acker petitioned for modification of child support. Acker asked the trial court to extend Nelson's support obligation beyond their son's eighteenth birthday and to order Nelson to pay post secondary educational support for him. Acker asserted:

> The child is still in high school and there is a need to extend support beyond the child's 18th birthday.
> [And] the child is in fact dependent and is relying upon the parents for the reasonable necessities of life.
> [He] is planning on attending college or a trade school and needs support while attending.

CP at 14.

On April 19, Nelson filed an Amendment to Washington State Child Support Schedule Worksheet and Financial Declaration in response to petition for modification of child support. He asked the trial court to modify the order of child support by

[g]ranting new child support calculations from Worksheet dated April 2, 2012 due to recent budget cuts with Petitioner's employer (United States Post Office) that resulted in reduction of weekly hours from 18 hours per week to 15 hours per week as a part-time flex clerk.

CP at 17.

On August 3, the trial court held a child support modification hearing. Nelson argued that he should not have to pay postsecondary educational support because (1) postsecondary educational support is not mandatory; (2) requiring him to pay postsecondary educational support would cause him a financial hardship because his employer, the United States Postal Service (USPS), guaranteed him only 15 work hours per week; and (3) the trial court had miscalculated his income in 2009.

Acker disagreed with Nelson's contention that an order requiring him to pay postsecondary educational support would cause him a financial hardship as a result of his limited hours at USPS:

I want to stress to the Court that he's—he says he's only guaranteed so many hours, but the record shows . . . that he's making more than his guaranteed 15 hours, 18 hours. He's going out; he's searching for extra hours at the post office, and he's making more than he's saying.

Report of Proceedings (RP) at 6. The trial court reviewed evidence of Nelson's wages at USPS, which revealed that Nelson had made $55,440.46 in gross wages in 2011. The trial court determined that Nelson had the means to contribute to his son's college education. In response to Nelson's claim that the trial court allegedly erred in calculating his income in 2009, the trial court informed Nelson that he had "slept on [his] rights." RP at 13.

The trial court found Nelson's arguments unpersuasive. The trial court determined that postsecondary educational support, although not mandatory, was warranted. In making its

determination, the trial court considered the following factors: The son's desire to attend college, enrollment at Montana State University, tuition and room and board costs, and work study. The trial court also considered the education levels of Nelson, Acker, and their daughter. Specifically, the trial court considered evidence that both Nelson and Acker had attended college, Nelson held a degree in criminal justice, and their daughter, a senior in college, was "going to be a successful graduate of college." RP at 22.

The trial court (1) orally ordered Nelson to pay postsecondary educational support for his son and (2) provided Acker with the following instructions:

> You're going to have to recalculate the child support with another work sheet, which will be the final work sheet. Once you recalculate all of that, run it by Mr. Nelson and see if he'll just agree that it's what I said from the bench today. Then you don't have to bring it back into court. If he'll sign off, then you cannot have to bring it in for presentment.

> On the other hand, if Mr. Nelson refuses to sign the order—we need an order and work sheets—then you'll need to bring it back in for presentment.

RP at 33. On November 2, 2012, the trial court entered a written Order on Modification of Child Support, which required Nelson to contribute to his son's postsecondary education. Nelson appeals.

## ANALYSIS

### I. FAILURE TO FOLLOW APPELLATE RULES

#### A. Inadequate Citation to Record

At the outset, we note that throughout his brief of appellant, Nelson fails to provide record cites as required by RAP 10.3(a)(5), (6): He provides no page numbers to identify which pages of the clerk's papers or report of proceedings support his factual assertions; and most of the documents to which he refers are documents outside the record before us on appeal. Nelson

4

also makes several arguments in his brief that involve facts outside of the record before us on appeal; in fact, most of the documents appended to Nelson's brief of appellant are not part of the appellate record in violation of RAP 10.3(a)(8) (an appendix to a brief may not include materials not contained in the record on review without permission from the appellate court); *City of Moses Lake v. Grant County Boundary Review Bd.*, 104 Wn. App. 388, 391, 15 P.3d 716 (2001). Nelson also frequently refers to exhibits in his brief's 148–page appendix to support his legal and factual claims instead of providing the required specific cite to a statute, court case, or record page. RAP 10.3(a)(5), (6).

A party seeking appellate review has the burden of providing us with all evidence in the record relevant to the issue before us. RAP 9.2(b); *Starczewski v. Unigard Ins. Grp.*, 61 Wn. App. 267, 276, 810 P.2d 58 (1991). Without the trial record, we cannot review challenged evidence in the context of the rest of the evidence presented. *Allemeier v. Univ. of Wash.*, 42 Wn. App. 465, 473, 712 P.2d 306 (1985). An insufficient record on appeal generally precludes our review of the alleged errors. *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

Such is the case here: Without providing citations to the record, Nelson contends that the trial court abused its discretion in (1) ordering him to pay his daughter's postsecondary educational support and to provide her with medical coverage after she legally emancipated herself from him; (2) failing to suspend postsecondary educational support when his son and daughter failed to comply with the conditions of RCW 26.19.090; and (3) failing "to enforce the duty and impose the breach of the duty to the respondent in contempt of court after Connie

Acker stated she did not have the documentation that she was required to bring to the November 2012 hearing per the subpoena duces tecum."[3] Br. of Appellant at 3.

---

[3] The record before us reflects that at the modification hearing, the trial court made no determination regarding (1) the daughter's alleged legal emancipation, (2) the son or the daughter's compliance with RCW 26.19.090, or (3) Acker's compliance with a subpoena duces tecum. Nelson fails to provide citations to the record for these findings. Accordingly, we decline to review his arguments. RAP 10.3(a)(5), (6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). To support his first argument, Nelson references exhibits from the appendix to his brief of appellant. As we have previously noted, these exhibits are not part of the record on appeal; thus he cites them in violation of RAP 10.3(a)(8). We further note, however, that the exhibits show only that the daughter legally changed her name, not that she legally emancipated herself from Nelson.

Without citation to the record, Nelson contends that the trial court abused its discretion in ordering him to pay retroactive postsecondary education support for his son and daughter based on "speculation" that his son and daughter would attend college. Nelson also asserts that (1) he was entitled to receive certain documentation under RCW 26.19.090; (2) Acker failed to provide him with this documentation for his daughter from February 17, 2009, to September 2010, and for his son from March 7, 2012 to October 12, 2012; and (3) it was "a violation of RCW 26.19.090 and the noncustodial parental rights" when "the court ordered [him] to retro pay postsecondary education support during these time periods" without first determining "that the children were indeed attending college." Br. of Appellant at 15. Nelson provides no meaningful argument, citation to the record, or authority to support his claim. Accordingly, we do not further address this argument. RAP 10.3(a)(5), (6); Cowiche Canyon Conservancy, 118 Wn.2d at 809.

In contrast, the record shows that the trial court ordered the son's postsecondary educational support payments to begin July 2012. In making this determination, the trial court properly considered his enrollment at Montana State University and the date Acker filed her petition for modification. Further, at the modification hearing, Nelson conceded that his son was enrolled at Montana State University:

THE COURT: Did you want to make an argument concerning your younger [child] even being in college? I kind of read between the lines that you wanted more proof.

MR. NELSON: Well, there's—I mean, [Acker] has the enrollment, Your Honor.

RP at 18-19.

Without citing authority or supporting legal analysis, Nelson asserts that, based on RCW 26.19.090, "the court cannot adequately consider the factors of this RCW if the noncustodial parent is not given proper documentation of: Proof of enrollment, class registration, and grades." Br. of Appellant at 14. Nelson again argues that Acker failed to provide him with certain documentation for his daughter from February 17, 2009 to September 2010, and for his son from March 7, 2012 to October 12, 2012. Nelson fails to provide citations to the record for these findings and offers no legal authority to support his argument. Accordingly, we decline to

review his argument. RAP 10.3(a)(5), (6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809. (But even if we were to review this contention, his argument would fail. RCW 26.19.090(2) sets forth a non-exhaustive list of factors a trial court may consider in ordering postsecondary educational support. The statute does not state that the adequacy of the trial court's consideration of the factors under RCW 26.19.090(2) depends on whether the noncustodial parent received "proof of enrollment, class registration, and grades," Br. of Appellant at 14, and we can find no authority to support such a proposition.)

To the extent that Nelson's argument refers to RCW 26.19.090(4), we decline to review this issue. RCW 26.19.090(4) states:

> The child shall also make available all academic records and grades to both parents as a condition of receiving postsecondary educational support. Each parent shall have full and equal access to the postsecondary educational records as provided in RCW 26.09.225.

RCW 26.09.090(4). The record before us on appeal does not show that the trial court made a determination as to whether the son or daughter made their academic records or grades available to Nelson. The record does reveal, however, that the modification hearing occurred on August 3, 2012, and at this hearing the trial court reviewed evidence that the son was enrolled to begin his freshman year at Montana State University. At the time of the modification hearing, the son's freshman year academic records and grades would not have been available for review.

Nelson contends that from October 2009 through November 2012, the trial court incorrectly calculated his income for child support purposes. Nelson contends that under *Engrossed Substitute H.B.* 1794, 60th Leg., Reg. Sess. (Wash. 2009), the trial court should not have considered his income from his second job. (We note that during the August 3, 2012 modification hearing, the trial court addressed Nelson's contention that the bill precluded the trial court from considering his income from his second job. The trial court asked Nelson if he had read the bill carefully and reminded him that the statute (RCW 26.19.071) had a "minimum hourly weekly requirement." RP at 7.) The appellate record does not contain any report of proceedings from a 2009 modification hearing. Nelson provides no citation to the record to support his claim. Accordingly, we do not further address this argument. RAP 10.3(a)(5), (6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809. (Again, the record shows the contrary: The trial court directly addressed Nelson's contention at the August 3, 2012 modification hearing. The trial court informed Nelson that he had "slept on [his] rights" by not bringing the court's alleged miscalculation in 2009 before the court by a motion of reconsideration or on appeal. RP at 14-15. Further, the trial court ruled that Nelson's gross monthly income would not include his income from his second job at A&J Market because it appeared to the court "to be speculative and part time. And the preponderance of [Nelson's] income is based on his career right now, which is with the USPS." RP at 35.)

Nelson further contends that the trial court violated H.B.1794 in not removing his "extra hours and annual leave at the USPS" from his income calculation. Br. of Appellant at 16. He argues that "[i]f the judge ordered A&J Market to be removed from the income calculations, he should have also ordered the extra hours outside of Cascade Locks and his annual leave to also be removed from the income calculations." Br. of Appellant at 16. Nelson's argument

## B. Unsupported Argument

In addition, the facts section of Nelson's brief includes argument in violation of RAP 10.3(a)(5), which requires that the statement of the case be "[a] fair statement of the facts and procedure relevant to the issues presented for review, *without argument.*" RAP 10.3(a)(5) (emphasis added). Pro se litigants are expected to comply with the Rules of Appellate Procedure. *State Farm Mut. Auto Ins. Co. v. Avery*, 114 Wn. App. 299, 310, 57 P.3d 300 (2002). And Nelson's brief falls well below the standards envisioned by RAP 10.3.

---

misconstrues the trial court's reasoning for excluding his income from his second job at A&J Market.

> H.B. 1794 was codified as RCW 26.19.071, which states in relevant part:
>
> (4) **Income sources excluded from gross monthly income.** The following income and resources shall be disclosed but shall not be included in gross income:
>
> . . .
>
> (i) Overtime or income from second jobs *beyond forty hours per week* averaged over a twelve-month period worked to provide for a current family's needs, to retire past relationship debts, or to retire child support debt, when the court finds the income will cease when the party has paid off his or her debts.

RCW 26.19.071(4)(i) (emphasis added).

Under RCW 26.19.071, income from a second job *beyond forty hours per week* shall be excluded from gross income. RCW 26.19.071(4)(i). At the August 3, 2012 modification hearing, the trial court reminded Nelson of this minimum hourly weekly requirement. Nonetheless, the trial court ruled that Nelson's gross monthly income should not include his income from his second job at A&J Market because it appeared to the court "to be speculative and part time. And the preponderance of his income is based on his career right now, which is with the USPS." RP at 35. Contrary to Nelson's assertion, the trial court did not rely on RCW 26.19.071(4) in making its determination to exclude his second income. Nelson provides no meaningful argument, citation to the record, or legal authority for his proposition that his annual leave or the additional hours he works at USPS outside of his guaranteed 15 hours per week should be excluded from his income. Accordingly, we decline to review this argument. RAP 10.3(a)(5), (6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809, 828.

Finally, Nelson contends, without citing to the record, that the DCS violated his "rights and responsibilities" when it placed a lien on his property and filed a Notice of Report to Credit Bureaus without scheduling a hearing on reasonable cause according to RCW 26.18.050. Br. of Appellant at 17. The record before us shows that the trial court made no determination regarding the DCS's alleged misconduct. Nelson fails to provide citation to the record for these findings. Accordingly, we decline to review his argument. RAP 10.3(a)(5), (6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809.

Nevertheless, we may address an improperly briefed legal or factual issue if the basis for the claim is apparent. *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (quoting *DeHear v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) (basis for assigned error "'apparent without further research'")). Furthermore, we are to interpret the Rules of Appellate Procedure "liberally . . . to promote justice and facilitate the decision of cases on the merits. Cases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands." RAP 1.2(a). Such is the case here to a limited extent.

Nelson's brief makes reasonably clear his challenge to the trial court's order that he pay postsecondary educational support for his son. The record before us on appeal is also sufficient for our review. The rest of Nelson's apparent claims, however, are so lacking in both legal and factual support that we cannot address them. Accordingly, we confine our review to whether the trial court abused its discretion when it ordered Nelson to pay postsecondary educational support for his son; in doing so, we consider only those arguments for which we find support in the record or in the law.

## II. POSTSECONDARY EDUCATIONAL SUPPORT FOR SON

Nelson contends that the trial court abused its discretion in ordering him to pay postsecondary educational support for his son[4] because (1) postsecondary educational support is not mandatory, and (2) an order requiring him to pay postsecondary educational support would cause him a financial hardship. We disagree.

### A. Standard of Review

The trial court has broad discretion to order support for postsecondary education. *Childers v. Childers*, 89 Wn.2d 592, 601, 575 P.2d 201 (1978); *see also In re Marriage of Newell*, 117 Wn. App. 711, 718, 72 P.3d 1130 (2003); *In re Marriage of Kelly*, 85 Wn. App. 785, 795, 934 P.2d 1218 (1997). A trial court abuses that discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Fiorito*, 112 Wn. App. 657, 664, 50 P.3d 298 (2002); *Newell*, 117 Wn. App. at 718.

---

[4] Nelson argues that the trial court abused its discretion in ordering him to pay postsecondary educational support for his son *and* his daughter. Although the November 12, 2012 child support order required Nelson to pay postsecondary educational support for both children, the record shows that Acker petitioned for postsecondary educational support for only the son; and the August 3, 2012 modification hearing focused on the appropriateness of awarding only this support. Apparently the trial court had previously considered the appropriateness of ordering postsecondary educational support for the daughter, the older child, and was simply reiterating that earlier decision in its November 12, 2012 child support order when it stated, "With respect to [the daughter], he'll continue to make those payments just as he's been," RP at 36, and, "One [child] is about to finish, however, so the obligation with respect to [his daughter] is—is finite now." RP at 33.

The record on appeal, however, does not contain a report of proceedings for a hearing during which the trial court determined the appropriateness of postsecondary educational support for the daughter or an order for such child support. Without the trial record, we cannot review challenged evidence in the context of the rest of the evidence presented. *Allemeier*, 42 Wn. App. at 473. An insufficient record on appeal generally precludes our review of the alleged errors. *Bulzomi*, 72 Wn. App. at 525. Accordingly, we decline to review whether the court abused its discretion in awarding postsecondary educational support for the daughter.

### B. Findings Support Postsecondary Educational Support Award

#### 1. RCW 26.19.090(2) factors

RCW 26.19.090(2) gives the trial court discretion to determine whether to order support for postsecondary educational expenses, and it provides a non-exhaustive list of factors a trial court can consider:

> The court shall exercise its discretion when determining whether and for how long to award postsecondary educational support based upon consideration of factors that include but are not limited to the following: Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources. Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together.

RCW 26.19.090(2).

The record before us on appeal supports the trial court's conclusion that the postsecondary educational support award was appropriate. The trial court reviewed evidence of the son's enrollment at Montana State University and considered his age, his tuition and room and board costs, and his work study. The trial court also considered Nelson's, Acker's, and their daughter's level of education, and their expectation to provide their son with a college education:

> [T]here's a history of college in your family. That's one of the things the Court looks at, is how were the children raised, were they raised in an expectation of going to college, is college education something the family values. In this case clearly you do. You, yourself, have a college education. Your ex-wife has something of a college education. [Your daughter] is going to be a successful graduate of college and [your son] has shown enough interest to at least start college. So we have to strike that off the list.
>
> If you were—if everybody was blue collar and the kids were raised with the expectation they wouldn't go to college, that would be different. It is not mandatory, but I am going to rule that [your son] be given money.

No. 44263-9-II

RP at 22.

We presume that the trial court considered all evidence before it in fashioning an order on postsecondary educational expenses. *Kelly*, 85 Wn. App. at 793. Although the trial court did not make extensive findings on the record as to each factor, RCW 26.19.090 sets forth no requirement that the trial court explicitly consider the factors on the record. *In re Marriage of Morris*, 176 Wn. App. 893, 906, 309 P.3d 767 (2013); *In re Marriage of Cota*, 177 Wn. App. 527, 537, 312 P.3d 695 (2013). Moreover, the record before us shows that the trial court properly considered the RCW 26.19.090(2) factors.

### 2. Nelson's ability to pay

Nelson next contends that the trial court abused its discretion in ordering him to pay postsecondary education support because this order would cause him financial hardship. To support his contention, he cites *Golay v. Golay*, in which the Washington Supreme Court noted that an order requiring a divorced father to pay for his daughter's college education should be based upon his "'station in life.'"[5] Br. of Appellant at 6 (quoting *Golay v. Golay*, 35 Wn.2d 122, 123-24, 210 P.2d 1022 (1949)). In reversing the trial court's modified child support order, the Supreme Court considered that the father could "scarcely spare any money from his own needs." *Golay*, 35 Wn.2d at 124. Such is not the case here, however.

---

[5] Nelson cites this case and makes his related argument in the facts section of his brief, in violation of RAP 10.3(a)(5).

12

Here, the trial court (1) reviewed evidence of Nelson's actual income; (2) implied that, unlike the father in *Golay*, Nelson had the means to contribute to his son's college education[6]; and (3) ruled that Nelson's financial hardship argument lacked merit. Thus, the record before us shows that the trial court properly considered whether Nelson had the means to contribute to his son's college education.

Addressing Nelson's contention that the USPS guaranteed him only 15 hours per week, the trial court stated:

> Now, [Nelson] argues that the postal service is under the gun to maybe even close offices down. Nobody's quite sure about their employment. Of course, the Court's aware of everything in the news about that. Nevertheless, the way courts have to look at this is to look at whatever history has been proved by a preponderance and make a determination on child support based on the history. And the history is, he makes about $54,000 a year. He did so in 2010. He did again in 2011.
>
> Now, if at the end of 2012[ Nelson] can prove that has been utterly incorrect, then perhaps the statute would allow him to move for modification, but in the meantime the only evidence is that that's historically what he makes. And I'll bet he made about that in 2009 also.
>
> In any case what I do have is just this: Exhibit Number 2, his wages. So the social security wages are the ones we use, and that's $55,440.46. Fifty-five four forty forty-six. Those are his gross wages out of which you'll calculate everything else.

RP at 35-36. Thus, the record before us shows that the trial court properly considered Nelson's income as a factor under RCW 26.19.090(2) and that it also properly considered the statutory factors set forth in RCW 26.19.090(2).

---

[6] *See, e.g.*, the trial court's advice to Nelson that if, at the end of 2012, he could prove that he made significantly less than the evidence at the hearing revealed, he could move to modify his secondary education child support obligation.

No. 44263-9-II

We hold that the trial court did not abuse its discretion in ordering Nelson to pay postsecondary educational support for his son. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Lee, J.

14