Fearing, C.J.
¶94 (concurring) —

Gentlemen of the Jury: The best friend a man has in this world may turn against him and become his enemy. His son or daughter that he has reared, with loving care may prove ungrateful. Those who are nearest and dearest to us, those whom we trust with our happiness and. our good, name, may become traitors to their faith. The money that a man has he may lose. It flies away from him perhaps when he needs it most. A man’s reputation may be sacrificed, in a moment of ill-considered. action. The people who are prone to fall on their knees to do us honor when success is with us, may be the first to throw the stones of malice when failure settles its cloud, upon our heads. The one absolutely unselfish fHend. that a man can have in this selfish world, the one that never deserts him, the one that never proves ungrateful or treacherous, is his dog.

Closing argument of future United States Senator George Vest, Burden v. Hornsby (1870).
¶95 I write this concurring opinion to advocate a change in the law. Principles underlying the law of damages for breach of contract and values basic to the law of negligent infliction of emotional distress call for an award of emotional distress damages to the owner of a companion animal when a veterinarian commits malpractice and breaches the implied covenant of competent care in the treatment of the pet. Unfortunately, Washington law has strayed from these principles and values by jaundicedly viewing pets as just another piece of personal property. I am bound by earlier Washington Supreme Court and Court of Appeals decisions *280 to affirm denial to Robert Repin of emotional distress damages, but I recommend our state Supreme Court’s consideration of our ruling. I do not recommend any changes to the law with regard to commercial animals.
Breach of Contract Damages
¶96 As noted in the majority opinion, in general, parties cannot recover noneconomic, emotional disturbance damages for breach of contract. Restatement (Second) of Contracts § 353 (Am. Law Inst. 1981); Gaglidari v. Denny’s Restaurants, Inc., 117 Wn.2d 426, 440-48, 815 P.2d 1362 (1991). Nevertheless, under the Restatement, an exception arises if “the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.” Restatement (Second) of Contracts § 353.
¶97 No Washington court has expressly adopted Restatement (Second) of Contracts § 353. Nevertheless, the Washington Supreme Court in Gaglidari v. Denny’s Restaurants, Inc., 117 Wn.2d 426, and the Court of Appeals in Hendrickson v. Tender Care Animal Hospital Corp., 176 Wn. App. 757, 312 P.3d 52 (2013) discussed the section as if Washington had adopted it. Washington courts have adopted or acknowledged other sections of Restatement (Second) of Contracts. Some examples are Restatement (Second) § 90 in Greaves v. Medical Imaging Systems, Inc., 124 Wn.2d 389, 398, 879 P.2d 276 (1994); § 151 in Chemical Bank v. Washington Public Power Supply System, 102 Wn.2d 874, 898-99, 691 P.2d 524 (1984), and Scott v. Petett, 63 Wn. App. 50, 58, 816 P.2d 1229 (1991); §§ 261 and 265 in Washington State Hop Producers, Inc. Liquidation Trust v. Goschie Farms, Inc., 112 Wn.2d 694, 707, 696, 773 P.2d 70 (1989); §§ 347 and 348 in Eastlake Construction Co. v. Hess, 102 Wn.2d 30, 46-47, 686 P.2d 465 (1984); § 371 in Young v. Young, 164 Wn.2d 477, 487-88, 191 P.3d 1258 (2008); and § 374 in Ducolon Mechanical, Inc. v. Shinstine/Forness, Inc., 77 Wn. App. 707, 711, 893 P.2d 1127 (1995).
*281 ¶98 The comments to Restatement (Second) of Contracts § 353 read, in part:
Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.
Restatement (Second) of Contracts § 353 cmt. a.
¶99 "The Restatements historical examples of contracts of carriers and innkeepers with passengers and guests may be outdated. Few, if any, recent cases award a passenger of a common carrier or guest of a hotel emotional distress damages for breach of contract. As to carriers, the federal ICC Termination Act of 1995 will likely bar any claim against a motor carrier for emotional distress. 49 U.S.C. § 14706; Moffit v. Bekins Van Lines Co., 6 F.3d 305, 306-07 (5th Cir. 1993). Other federal law will, in turn, likely bar any claim against an air carrier for emotional distress damages. 49 U.S.C. § 41713; Tobin v. Federal Express Corp., 775 F.3d 448, 452 (1st Cir. 2014). As to innkeepers, the hotel owner may still remain subject to emotional distress damages for breach of contract. Amick v. BM & KM, Inc., 275 F. Supp. 2d 1378 (N.D. Ga. 2003) (applying Georgia law); Dold v. Outrigger Hotel, 54 Haw. 18, 501 P.2d 368 (1972), overruled by Francis v. Lee Enterprises, Inc., 89 Haw. 234, 971 P.2d 707 (1999).
¶ 100 Regardless of the current state of the law regarding common carriers and hoteliers, more reason exists to allow the owner of a pet to recover for emotional distress resulting from the negligence of a veterinarian’s causing death or injury to the companion animal. Breach of contract by the veterinarian will likely cause serious emotional distur *282 bance or at least more so than contract breaches by innkeepers and carriers. The veterinarian knows of the bond between a human being and his companion animal and the trauma resulting from a breach of the contract to competently care for the pet.
¶101 As discussed in the majority opinion, Gaglidari v. Denny’s Restaurants, Inc., 117 Wn.2d 426 (1991) is a principal Washington decision involving recovery of emotional distress damages for breach of contract. Ronda Gaglidari sued Denny’s for breach of an employment contract. The Washington Supreme Court reversed a jury award of emotional distress damages. The court wrote:
[B]y allowing emotional damages whenever they are a foreseeable result of the breach, the traditional predictability and economic efficiency associated with contract damages would be destroyed. In order to avoid the unpredictable and destabilizing results of such an approach, most courts have generally limited emotional distress damages to contracts uniquely intended to protect some personal interest or security and which are incapable of compensation by reference to the terms of the contract.
It is easily predictable there would be a jury issue on emotional distress in nearly every employee discharge case and in fact nearly every breach of contract case. The contractual consensus of the parties will become secondary to an action in tort. This will represent a profound change in the law, the implication of which probably can be explained only by adverting to the “Law of Unintended Consequences”. If there is to be a change of the common law, we believe a more prudential approach would be for the Legislature to consider the matter prior to such a change occurring.
Gaglidari, 117 Wn.2d at 446, 448.
¶102 One flaw in Gaglidari v. Denny’s Restaurants, Inc., is that a discharged employee nearly always now sues in tort, regardless of whether the employee adds a claim in contract, such that most every employee discharge case now entails a jury question of emotional distress. More impor *283 tantly, the Gaglidari court wished to limit emotional distress damages to contracts uniquely intended to protect some personal interest or security and which are incapable of compensation by reference to the terms of the contract. The court does not define a contract intended to protect “some personal interest.” The court may have pondered contracts wherein the breach may defame the plaintiff or injure his or her status in the community or contracts that concern the psyche of the plaintiff such as counseling contracts.
¶103 Regardless, pet owners hold a personal interest, not simply an economic interest, in companion animals. Pets possess an enormous hold on Washington residents, as illustrated by Kaisa being the sole companion of Robert Repin. Washingtonians devote hours to walking, playing, feeding, stroking, and caring for pets. Washingtonians mourn the death of a pet. In turn, pets return hours of love, devotion, and companionship to owners. Veterinarians know well the devotion that owners possess toward pets. Small animal veterinarians uncynically and legitimately make money from this devotion.
¶104 According to the American Pet Products Association, total pet industry expenditures in the United States reached $60.28 billion in 2015. Americans spent a total of $23.05 billion on pet food, $14.28 billion on supplies and medicine, $15.42 billion on veterinarian care, $2.12 billion on live animal purchases, and $5.41 billion on pet services like grooming and boarding. Pet Industry Market Size & Ownership Statistics, Am. Pet Prods. Ass’n, http://american petproducts.org/press_industrytrends.asp [https://perma.cc /QP5H-WE94]. According to a report by the Bureau of Labor Statistics, on average, each U.S. household spent over $500 on pets in 2015. Amelia Josephson, The Economics of the Pet Industiy, SmartAsset (Dec. 25, 2015), https://smartasset.com /personal-finance/the-economics-of-the-pet-industry [https:// perma.cc/JLP9-LNW9]. Since some households lack a pet, those households with pets spend on average more than $500 per year.
*284 ¶105 Hendrickson v. Tender Care Animal Hospital, Corp., 176 Wn. App. 757 (2013) is an indistinguishable decision that we follow. The Hendrickson court summarily dismissed Julie Hendrickson’s claim for emotional distress damages resulting from the death of her pet dog during the care by a veterinarian. A primary rationale behind the court’s ruling was the historical treatment of animals as any other article of personal property. 176 Wn. App. at 767. This historical treatment now belies reality.
¶106 Many decisions, including Washington decisions, recognize the bond between animal and human and the intrinsic and inestimable value of a companion animal. “We recognize that the bond between pet and owner often runs deep and that many people consider pets part of the family.” Mansour v. King County, 131 Wn. App. 255, 265, 128 P.3d 1241 (2006). Harm may be caused to a person’s emotional well-being by malicious injury to that person’s pet as personal property. Womack v. Rardon, 133 Wn. App. 254, 263-64, 135 P.3d 542 (2006). “Pickford, with good reason, maintains that Buddy is much more than a piece of property; we agree.” Pickford v. Masion, 124 Wn. App. 257, 263, 98 P.3d 1232 (2004).
Here, first, the private interest involved is the owners’ interest in keeping their pets. This is greater than a mere economic interest, for pets are not fungible. So the private interest at stake is great.
Rhoades v. City of Battle Ground, 115 Wn. App. 752, 766, 63 P.3d 142 (2002).
¶107 Foreign decisions echo this sentiment. The emotional attachment to a family’s dog is not comparable to a possessory interest in furniture. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005). Pets are not inanimate objects, and an emotional bond exists between some pets and their owners. Barrios v. Safeway Insurance Co., 2011-1028 (La. App. 4 Cir. 3/21/12), 97 So. 3d 1019, 1023-24.
*285 ¶108 The other concurring opinion mentions two typical objections to judicial changes in the law. First, this court should leave any changes to the state legislature. The flaw in this argument lies in the fact that the judiciary, without input from the legislature, created the rule denying emotional distress damages for breach of veterinarian contracts. The rule conflicts with underlying legal principles. Therefore, the courts, not the legislature, should correct the error and align the rule with the underlying principles.
¶109 The legislature has never addressed whether pet owners may recover emotional distress damages. When no statute in this state examines a subject matter, it is both appropriate and proper that the courts decide the question. In re Welfare of Bowman, 94 Wn.2d 407, 420, 617 P.2d 731 (1980).
¶110 Second, the other concurring opinion worries about harm to the veterinarian profession and the end to some veterinarians’ practices. Nevertheless, one may recover emotional distress damages against physicians and lawyers. Harbeson v. Parke-Davis, Inc., 98 Wn.2d 460, 477, 656 P.2d 483 (1983) (physician); Paul v. Judicial Watch, Inc., 543 F. Supp. 2d 1, 7 (D.D.C. 2008) (attorney); Gillespie v. Klun, 406 N.W.2d 547, 558 (Minn. Ct. App. 1987) (attorney); McAlister v. Slosberg, 658 A.2d 658, 660 (Me. 1995) (attorney); In re Jackson, 92 B.R. 987, 999 (Bankr. E.D. Pa. 1988) (attorney); Wagenmann v. Adams, 829 F.2d 196, 221 (1st Cir. 1987) (attorney). The availability of such damages has not irreparably harmed these or other professions. The noble veterinarian profession deserves no protections denied other professions.
Negligent Infliction of Emotional Distress
¶ 111 I agree with Washington law’s requirement that, to recover in negligent infliction of emotional distress, the plaintiff must show objective symptomatology and the emotional distress must be susceptible to medical diagnosis *286 and proved through medical evidence. Kloepfel v. Bokor, 149 Wn.2d 192, 196-97, 66 P.3d 630 (2003); Hegel v. McMahon, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). The majority opinion denies Robert Repin recovery in negligent infliction of emotional distress based on the absence of medically documented objective symptomatology.
¶112 I criticize current Washington law in that state law may impose a strict prohibition on a pet owner recovering emotional distress damages for loss of a human-animal bond based on the negligent death or injury to a pet. Sherman v. Kissinger, 146 Wn. App. 855, 873, 195 P.3d 539 (2008); Pickford v. Masion, 124 Wn. App. 257 (2004). No reason exists to distinguish between emotional distress suffered from the death or serious injury to a pet and emotional distress suffered from other events caused by the negligence of a defendant.
¶113 At least one Washington decision recognizes the harm that may be caused to a person’s emotional well-being by malicious injury to that person’s pet. Womack v. Rardon, 133 Wn. App. at 264 (2006). Because of the role of pets in our society, this recognition should extend to instances of negligent injury.